BAYSTATE DRYWALL, INC. *vs.* CHICOPEE SAVINGS BANK.

Hampden. October 9, 1981. — January 8, 1982.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, & NOLAN, JJ.

*Uniform Commercial Code*, Security interest. *Motor Vehicle*, Security interest.

Where it appeared that a wife, acting with her husband's authority, had obtained from a bank a loan of purchase money for a motor vehicle and had delivered to the bank a security agreement with respect to the vehicle, that title to the vehicle was taken in the husband's name alone, and that the husband thereafter signed an application for a certificate of title to the vehicle on which the lender's security interest was shown, there was sufficient acknowledgment of the security agreement by the husband so that the bank's security interest was enforceable by it against him, and was superior to the claim of a judgment creditor of the husband who sold the vehicle on execution. [19-23]

CIVIL ACTION commenced in the Springfield Division of the District Court Department on September 26, 1978.

The case was heard by *Lenhoff*, J.

*Michael G. West* for the plaintiff.

*Richard A. Corbert* for the defendant.

WILKINS, J. We are concerned with whether the defendant, Chicopee Savings Bank (bank) held an enforceable security interest in a motor vehicle. The bank argues that its claim is superior to the claim of the plaintiff which sold the motor vehicle on execution to satisfy its judgment against the vehicle's owner. A judge of the District Court ruled for the bank, and the plaintiff claimed a report. The Appellate Division of the District Courts dismissed the report on a ground we find to have been inappropriate. The case is before us on the plaintiff's appeal. We rule in favor of the bank.

We summarize the significant facts contained in the report. In June, 1976, Josephine I. Tessier borrowed $5,478

from the bank. She signed a promissory note and security agreement that stated that a specifically described 1976 Oldsmobile Cutlass Supreme automobile was security for the loan.[1] The bank issued a check payable to Josephine I. Tessier and Reiter Oldsmobile. Mrs. Tessier's husband Gerard purchased the vehicle, using the proceeds of the loan to pay for the vehicle, and title was placed in his name only. The title certificate listed him as the owner and listed the bank as a lien holder under a chattel mortgage. Gerard authorized Josephine to use the motor vehicle as collateral and to execute the necessary documents to create the bank's security interest. This case arises because Gerard did not sign the security agreement, and, as far as the report shows, he did not give the bank directly any written statement that as owner of the vehicle he acknowledged the bank's security interest.

In January, 1978, about eighteen months later, the plaintiff recovered judgment against Gerard in the amount of $1,817.84 in an action brought in the Springfield District Court. Pursuant to an execution, the motor vehicle was sold in March, 1978, for $3,400. The plaintiff paid the bank $2,831.73 for the release of the bank's alleged lien on the motor vehicle. When, on the delivery of a copy of the security agreement, the plaintiff discovered that Gerard had not signed the security agreement, the plaintiff made demand on the bank for the return of the $2,831.73. The

---

[1] The parties submitted the case on an "agreed statement of facts." In that agreement, they stated that "[t]he security agreement gave [the bank] a security interest in the [motor vehicle]." The Appellate Division seized on that language to conclude that (1) the plaintiff agreed that the bank had a security interest in the motor vehicle and (2) the agreement was dispositive of the case. If that language were to be read as other than a statement that the security agreement purported to give the bank a security interest in the vehicle, the balance of the statement of agreed facts, and indeed the law suit itself, would be supererogatory. In another part of the "agreed statement of facts," the bank's lien is referred to as an "alleged lien." Certainly the plaintiff cannot be found to have conceded the case. The bank rightly does not so argue before us.

bank declined to pay the amount demanded, and the plaintiff commenced this action seeking to recover it.[2]

Because the material transactions occurred in 1976, we deal here with the provisions of article nine of the Uniform Commercial Code before its revision in 1979. See St. 1979, c. 512, § 7.[3] A security interest is not enforceable against the debtor or third parties unless certain conditions are met. G. L. c. 106, § 9-203 (1), as appearing in St. 1957, c. 765, § 1. Where the collateral is not in the possession of the secured party, as is the case here, three conditions must be met before a security interest in the collateral can attach. There must be a proper security agreement signed by the debtor and containing a description of the collateral (G. L. c. 106, § 9-203 [1] [b]); the debtor must have rights in the collateral; and value must be given (G. L. c. 106, § 9-204 [1]). When these three requirements for the attachment of a security interest are fulfilled, the security interest then only becomes fully enforceable if it is perfected by recording or by following some similar procedure.

The plaintiff grants that certain of these conditions are met. However, the plaintiff argues that, if Gerard was a debtor for the purposes of § 9-203 (1), he did not sign a security agreement and that Josephine, by her execution of the security agreement, did not have rights in the collateral so as to create a security interest in the motor vehicle. We conclude that Gerard (as well as Josephine) was a debtor for the purposes of § 9-203 (1) (b), and, consequently, the bank's purported security interest is enforceable against the

---

[2] The bank makes no point before us that the amount of the unsatisfied execution was substantially less than the $2,831.73, which the plaintiff seeks in this action. Perhaps if the bank's claim that it was a secured creditor were rejected by this court, Gerard, and not the bank, would be entitled to the proceeds of the execution sale in excess of the amount necessary to satisfy the plaintiff's claim. On the other hand, as between Gerard and the bank, perhaps the bank would be entitled to the balance. The Tessiers are not parties to this action, and we need not decide the point.

[3] It seems that the 1979 revisions of article nine would not change the result we reach.

plaintiff only if Gerard has "signed a security agreement which contains a description of the collateral."

We regard Gerard as a "debtor" for the purposes of § 9-203 (1), because in these circumstances a "debtor" includes the owner of the collateral, even if he is not obligated on the debt. See G. L. c. 106, § 9-105 (1) (d), defining a debtor and set forth in the margin.[4] The provisions of G. L. c. 106, §9-203, deal with the collateral; thus under G. L. c. 106, § 9-105 (1) (d), the owner of the collateral, Gerard, is a debtor for the purposes of determining rights in the collateral. This conclusion is supported by the decisions of courts which have dealt with this question in similar circumstances. See *K.N.C. Wholesale, Inc.* v. *AWMCO, Inc.*, 56 Cal. App. 3d 315, 319-320 (1976); *Southwest Bank* v. *Moritz*, 203 Neb. 45, 53-54 (1979); *General Motors Acceptance Corp.* v. *Washington Trust Co.*, 120 R.I. 197, 202 (1978); *Clearfield State Bank* v. *Contos*, 562 P.2d 622, 624-625 (Utah 1977); *In re Corsi*, 24 U.C.C. Reporting Serv. 216, 217-218 (D. Vt. 1978). See also 6F Bender's Uniform Commercial Code Service, Willier & Hart U.C.C. Reporter-Digest § 2-1656.4 (1981); Squillante, The Security Agreement, Part IV, 86 Com. L.J. 235 (1981).[5]

We turn then to the question whether Gerard signed a security agreement sufficient to create a security interest. It

---

[4] General Laws c. 106, § 9-105 (1) (d), as appearing in St. 1957, c. 765, § 1, reads as follows: "(d) 'Debtor' means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts, contract rights or chattel paper. *Where the debtor and the owner of the collateral are not the same person, the term 'debtor' means the owner of the collateral in any provision of the Article dealing with the collateral*, the obligor in any provision dealing with the obligation, and may include both where the context so requires" (emphasis supplied).

[5] If Gerard were not a "debtor" who must have signed a security agreement to make the bank's security interest enforceable, we would need to consider whether Josephine had "rights in the collateral" so as to make the security interest enforceable against the collateral. See Squillante, *supra* at 235 n.5; *Avco Delta Corp.* v. *United States*, 459 F.2d 436, 441 (7th Cir. 1972).

is not necessary that Gerard have signed a formal security agreement, if there were documents which collectively established an intention to execute a security agreement by the grant of a security interest in the motor vehicle. *Matter of Numeric Corp.*, 485 F.2d 1328, 1331 (1st Cir. 1973). The two purposes of the signature requirement are to prevent disputes over which items of property are covered by a security interest and to serve as a Statute of Frauds. *Id.* A "security agreement" is "an agreement which creates or provides for a security interest." G. L. c. 106, § 9-105 (1) (*h*). An "agreement" is "the bargain of the parties in fact as found in their language or by implication from other circumstances." G. L. c. 106, § 1-201 (3).

We must, therefore, look to what agreement or agreements exist and whether Gerard signed any document which with other documents constitutes a security agreement. There was a security agreement signed by Josephine. She signed it with Gerard's understanding and assent, and the inference is clear the purpose of the loan was to obtain funds so that Gerard could purchase the motor vehicle. Although Gerard did not sign that agreement, it is admitted that Josephine did sign it with his authority but not in his name. But for the absence of Gerard's signature, the formal security agreement is adequate in all respects to create an enforceable security interest in favor of the bank. If Gerard signed a separate acknowledgment of the existence of the security interest, we think the security interest properly attached (see G. L. c. 106, § 9-204 (1), as appearing in St. 1957, c. 765, § 1) and is enforceable.

Although the report does not contain an application signed by Gerard for the issuance of a certificate of title showing the bank's security interest, the inference is fairly warranted that he signed such an application. The record contains a certificate of title in Gerard's name showing the bank's lien. Under G. L. c. 90D, § 21, inserted by St. 1971, c. 754, § 1, "[a] security interest in a vehicle for which a certificate of title is issued under [G. L. c. 90D] is perfected by the delivery to the registrar of . . . an application for a

certificate of title containing the name and address of the lienholder." The owner must execute the application to name the lienholder. G. L. c. 90D, § 22 (*a*). We think, therefore, that the record reasonably shows that Gerard signed an application disclosing the bank's interest in the collateral.

We accept the view, generally held, that a security interest in a motor vehicle cannot be created just by completing the process prescribed by a "certificate of title" statute, nor does a reference to a lien stated on a title certificate alone constitute a security agreement. See *Shelton* v. *Erwin*, 472 F.2d 1118, 1120 (8th Cir. 1973); *White* v. *Household Fin. Corp.*, 158 Ind. App. 394, 406 (1973); *In re Corsi*, 24 U.C.C. Reporting Serv. 216, 218 (D. Vt. 1978), and cases cited. Contra, *Peterson* v. *Ziegler*, 39 Ill. App. 3d 379, 384 (1976) (2-1 decision). A debtor need not, however, sign a document designated "security agreement" in order to satisfy the code requirement that the debtor sign a security agreement. See *Komas* v. *Future Syss., Inc.*, 71 Cal. App. 3d 809, 814 (1977). A combination of documents may meet that requirement. See *Matter of Bollinger Corp.*, 614 F.2d 924, 926-927 (3d Cir. 1980) (promissory note, financing statement, and correspondence); *Matter of Numeric Corp.*, 485 F.2d 1328, 1331-1332 (1st Cir. 1973) (financing statement and a directors' resolution); *In the Matter of Carmichael Enterprises, Inc.*, 334 F. Supp. 94, 104-105 (N.D. Ga. 1971), aff'd per curiam, 460 F.2d 1405 (5th Cir. 1972) (financing statement and a letter on which the debtor wrote "agreed"); *Matter of Fibre Glass Boat Corp.*, 324 F. Supp. 1054, 1055-1056 (S.D. Fla. 1971) (financing statement and letter); *In re Center Auto Parts*, 6 U.C.C. Reporting Serv. 398, 399 (C.D. Cal. 1968) (promissory note and financing statement); *Komas* v. *Future Syss., Inc.*, *supra* at 814 ("A writing or writings, regardless of label, which adequately describes the collateral, carries the signature of the debtor, and establishes that in fact a security interest was agreed upon, would satisfy both the formal requirements of the statute and the policies behind it"); *Casco Bank & Trust*

*Co.* v. *Cloutier*, 398 A.2d 1224, 1229-1231 (Me. 1979) (promissory note and financing statement).

On the basis of these principles, we conclude that the combination of (1) the security agreement signed by Josephine with Gerard's authority and (2) his written acknowledgment of the existence of the security interest, stated in his application for a title certificate to the motor vehicle, constituted a security agreement signed by the debtor for the purposes of permitting enforcement of the security interest in favor of the bank. There was a clear indication of the security interest both on the security agreement and on the title certificate, and the application for the title certificate was a document signed by Gerard acknowledging the existence of the security interest. No creditor or other third party could reasonably have been misled. See *Casco Bank & Trust Co.* v. *Cloutier, supra* at 1230-1231. Although the procedures followed by the bank are hardly recommended practices, the bank's security interest did attach and was perfected before the plaintiff acquired any rights in the motor vehicle.

Entry of judgment for the defendant was correct, and the order of the Appellate Division dismissing the report is affirmed.

*So ordered.*