In re F.R. OF NORTH DAKOTA, INC., d/b/a Famous Fried Chicken, f/d/b/a F.R. Restaurants, Inc., and F.R. of Jamestown, Inc., Debtor.

F.R. OF NORTH DAKOTA, INC., Plaintiff,

v.

FIRST NATIONAL BANK OF WILLISTON, Defendant.

Bankruptcy No. 84–05483.
Adv. No. 84–7137.

United States Bankruptcy Court, D. North Dakota.

May 28, 1985.

David L. Johnson, Fargo, for plaintiff.

Richard A. McKennett, Williston, for defendant U.S. Trustee.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

By Complaint filed November 14, 1984, the Debtor, pursuant to section 506 of the Bankruptcy Code, seeks a determination of the nature and extent of First National Bank of Williston's (BANK) interest in certain property and to the extent the Bank is unperfected, the Debtor seeks avoidance under section 544 of the Code. A hearing on the Debtor's Motion for Default Judgment was heard on April 10, 1985, and the parties stipulated as to the facts upon which the issue could be decided. At issue is whether the descriptions of secured collateral as set forth in the Bank's security agreement and financing statements are sufficient to create or perfect a security interest in certain items which are in dispute.

## FINDINGS OF FACT

As of the date of the bankruptcy petition, the Debtor was indebted to the Bank in the sum of $87,530.27 stemming from a retail installment contract. The only documents before the Court are a combination note, disclosure and security agreement which appears to be dated September 23, 1983, and which appears to be a renewal of a prior loan. Also submitted are two financing statements. The first is dated September 9, 1982, and filed with the Register of Deeds for Williams County, North Dakota. The second is dated September 13, 1982, and filed with the Office of the North Dakota Secretary of State. Also submitted as an attachment to the Debtor's Post-Trial Memorandum is a document entitled "Projected Capital Costs" listing an equipment and supply package. This listing was provided to the Debtor in response to the Debtor's Interrogatories, but no testimony was offered regarding its use or whether it was ever a part of the security agreement. The Court cannot assume facts not in evidence and thus does not consider the document entitled "Projected Capital Costs" to be a part of the security agreement.

The document extending a security interest to the Bank is a standard Banker System's combination form. The note portion states that the purpose of the loan is a renewal and "purchase of equipment". The disclosure portion bears a checked box providing "I am giving a security interest in the goods or property being purchased". Precisely what type of property was purchased with the loan proceeds is unknown.

The security agreement portion provides for a security interest in "all furniture, fixtures and small wares, accessions, now owned and hereafter acquired used in the business known as Famous Recipe Fried Chicken, Williston, North Dakota". The

financing statements bear an identical property description. Neither of the financing statements bear any information necessary for a fixture filing.

The Bank argues that the description of property on the security agreement and financing statements, although not specifically mentioning "equipment", is sufficient to cover the items in dispute. The stipulation bears an itemized list of the disputed items. The Bank concedes it is not secured as to certain of the items, and the Debtor makes no claims as to others. Remaining in dispute are the following chattels:

1) Illuminated menuboard
2) Menu inserts
3) Drive Thru Menuboard
4) Menu price numbers
5) Miscellaneous small parts
6) Duke worktable
7) Mercury vapor sign
8) Key service phone system
9) RCP Ingredient bin
10) PK Accuweigh Scale
11) Ansul Twin Fire System
12) PHT Cooker parts
13) Flat sign attached to building
14) Time clock hung on wall
15) Walkin refrigerator built in
16) Back splash exhaust hood screwed on wall
17) Music system with speakers mounted in ceiling tile

Of the foregoing items, the Bank believes the five items attached to the building in the manner noted are fixtures. No testimony was offered by either party regarding their intent as to the extent of the security interest or the nature of the items in question. The Court is left to make these determinations from the meager evidence presented.

The question is whether the specific categories of "furniture", "fixtures" or "small wares" as contained in the security agreement and financing statements could conceivably be interpreted to include the disputed items.

## CONCLUSIONS OF LAW

### 1.

In order to maintain perfection as a fixture filing, a financing statement must show that it covers that type of collateral, must recite that it is to be filed in the real estate records and either contain a real estate description or the name of the record owner. N.D.Cent.Code § 41-09-41(5) (U.C.C. § 9-401(5)). The Bank's financing statements are completely deficient in this regard, and its security interest is not perfected as against items that might be true fixtures. The only items in dispute which could conceivably be fixtures are the four items affixed in some fashion to a wall or ceiling and the walkin refrigerator that is apparently built into the structure. As defined by statute, a thing becomes a fixture when it is so related to particular real estate that an interest therein arises under real estate law. N.D.Cent.Code § 41-09-34(1)(b) (U.C.C. § 9-313(1)(a)). This statutory language is not particularly helpful in determining whether a particular item might in fact be a fixture. Courts, in considering the question, generally apply a three-part test, to-wit: whether there is an actual annexation of the item to the real property, whether the item is appropriate for use on the particular premises to which it is affixed, or whether it is readily usable elsewhere as well; whether the intent of the affixing party was that the item become permanently affixed to the real property. *Schnaible v. City of Bismarck*, 275 N.W.2d 859 (N.D.1979), adopting language from *Morris v. Alexander*, 208 Mich. 387, 175 N.W. 264 (Mich.1919). Neither the fact of physical attachment nor the fact that an item is called a fixture is determinative of the question. The most significant factor is the intent of the affixing party. *5 American Law of Property*, § 19-1 (1952). If an item is affixed in such a manner that it would be considered a part of the realty, that item may nonetheless be removed by the affixing party if the intent was for temporary attachment and the item can be removed without damage to the premises.

Items of this type are distinguished from a true fixture and are called trade fixtures. An item which would be considered a fixture from its manner of affixation to the real estate may retain its separate nature as a trade fixture if the affixing party intended temporary attachment, the item in question is of a commercial nature and readily removable without substantial damage to the premises to which it is attached. Improvements and additions to property by a lessee, including those attached to the premises, are generally considered trade fixtures rather than true fixtures and do not become part of the real estate. *Schnaible*, supra; *Central Chrysler Plymouth, Inc. v. Holt*, 266 N.W.2d 177 (Minn. 1978). If the nature of the chattel in question is so ambiguous that its status cannot be determined, clarifying parole evidence may be offered. However, if the status remains unclear, then the item does not become a true fixture. *R. Brown*, The Law of Personal Property, § 16.6 at 539 (3rd Ed.1975). The record before this Court, unlike that presented to the bankruptcy court in *In re Schwen's, Inc.*, is sorely lacking in evidence sufficient to establish the true nature of the five items which could conceivably be considered fixtures by virtue of their method of attachment. In *In re Schwen's, Inc.*, aff'd at 20 B.R. 638 (D.C.Minn.1982), the bankruptcy court was provided evidence of industry custom, owner intent as evidenced by fiscal records, type of equipment, its size, weight, interchangeability and method of attachment. Because of the paucity of evidence with regards to the nature of the equipment and the intent of F.R. of North Dakota, Inc., this Court is uncertain that the five items affixed to the property were intended as true fixtures and therefore considers them to be personalty.

2.

The Bank may yet have a security interest in all of the enumerated items if those items can, in some manner of construction, be covered by the descriptions contained in the security agreement and the financing statements. This Court has previously recognized that a financing statement has as its purpose only to reasonably identify the nature of the secured collateral such that a third party might be placed on notice or such that it would be reasonable for a third party to make further inquiry. *In re Nelson*, 45 B.R. 443 (Bankr.N.D.1984); *In re Alexander*, 39 B.R. 110 (Bankr.N.D.1984). Liberality in defining language is permissible in a financing statement if that language does not mislead and at least suggests that further inquiry is appropriate. With regard to the financing statements, the inquiry must be whether the information thereon suggests the existence of additional security leading one to inquire further. The same degree of flexibility as to language is not accorded to the security agreement itself. The security agreement embodies the intention of the parties and is the primary source to which a creditor must direct his inquiry regarding the true nature of the security interest intended. A security interest is defined by the description contained in the security agreement. *Allis-Chalmers Corp. v. Staggs*, 117 Ill.App.3d 428, 72 Ill.Dec. 840, 453 N.E.2d 145 (5th Cir.1983); *In re Fagan*, 6 U.C.C.Rep. 1004 (D.C.N.Y.1979). For this reason, the description must be reasonably specific. *In re Laminated Veneers Co., Inc.*, 471 F.2d 1124 (2nd Cir.1973). North Dakota Century Code § 41–09–10 (U.C.C. § 9–110) provides that the description of personal property need not be specific but must reasonably identify what is described. The key phrase is "reasonably identify what is described". The Bank argues that each of the classifications of "furniture", "fixtures" and "small wares" used in the financing statements and security agreement could be considered to reasonably identify the items in dispute.

The two financing statements with which we are concerned make no reference to equipment but do refer to categories of items used in a fried chicken establishment. The precise nature of what is meant by furniture, fixtures and small wares cannot be determined from the financing state-

ment but does serve as notice that a fairly broad range of chattels is being covered. The financing statements do suggest that further inquiry is necessary to determine the extent of the items covered by the categories. The term "fixture" is ambiguous enough in the context of a restaurant business to at least suggest the possibility of a security interest existing in trade fixtures. From a purely notice standpoint, the financing statements do constitute sufficient notice.

3.

■ A description that is adequate for a financing statement may be inadequate to satisfy the "reasonably specific" requirement of N.D.C.C. § 41–09–10 when applied to the security agreement itself. As to the security agreement, greater particularity is required. *In re Munzenreider Corp.*, 34 B.R. 82 (Bankr.M.D.Fla.1983). The terms of a security agreement are strictly construed against the drafter consistent with the fundamental rules of contract construction. N.D.Cent.Code § 9–07–19. *See also In re Kohl,* 18 B.R. 670 (Bankr.W.D.Wisc. 1982). The person having reason to inquire further has only the security agreement which on its face does not broaden, add to, or further clarify the categories. The inquirer is still left wondering what is meant by the terms "furniture", "fixture" and "small wares". As is applicable to contract construction generally, words employed are to be understood in their ordinary and popular sense. N.D.Cent.Code § 9–07–09. The foregoing three categories alone, without further clarification or information, are not expansive enough to include "equipment" unless that equipment is a trade fixture. As previously noted, however, whether something is a trade fixture depends upon intent, method of attachment and ease of removal. These indicia are not suggested from the face of the security agreement. The case of *In re Modern Engineering & Tool Co., Inc.,* 25 U.C.C. Rep. 580 (D.C.Conn.1978) involved a security agreement bearing the word "inventory". The court held that it was sufficient to cover equipment, machinery and tools

because the party's intent was clear from a detailed listing of all equipment attached to the security agreement. If this schedule had not been attached to the security agreement, the court said the term would not have satisfied the requirements of U.C.C. § 9–110 because "inventory" alone was not descriptive of the collateral. Similarly, in *In re Houts,* 31 U.C.C.Rep. 338 (D.C.N.Y.1981), the court held that security agreement categories of "plants, trees, scrubs and merchandise purchased for resale" could not be read to include a cash register. In *In re Mansour,* 29 B.R. 114 (Bankr.S.D.Fla.1983), the term "all other personal property" was held insufficient to include good will. In the case at bar, none of the items presently in dispute between the parties can properly be categorized as "furniture" or "small wares" as those terms are normally used. The larger items affixed in some fashion to the real property could conceivably be regarded as trade fixtures, but the security agreement does not expand on the term "fixture" to even suggest that it might mean something other than a true fixture which became part of the realty. The non-attached items such as scale, sign, cooker parts and menu board cannot be regarded as furniture, small wares or even trade fixtures. Perhaps, if the security agreement had had a schedule of specific items purchased attached to it, it may have been regarded as sufficient to establish a security interest in those items despite the lack of a precise category. *In re Modern Engineering & Tool Co., Inc., supra.* The only general category truly descriptive of the items in dispute is the word "equipment". The term equipment is a floating concept valid as against all goods used in a business. N.D.Cent.Code § 41–09–09(2) (U.C.C. § 9–109(2)). *See In re Whitacre,* 21 U.C.C.Rep. 1169 (D.C.Ohio 1976).

The Court regards the descriptive categories contained in the security agreement to be deficient in describing the items in dispute and, as a consequence, the security agreement must fail with regards to the

Bank's claim of a security interest in the disputed items.

Section 544 of the Bankruptcy Code, termed the "strong-arm" provision, accords to a trustee the status of a judicial lien creditor who may seek priority over other claims or interests in property which remain unperfected. A debtor-in-possession in a Chapter 11 case is vested with the voiding powers of a trustee and steps into the shoes of a hypothetical lien creditor as against unperfected security interests. 11 U.S.C. § 1107(a). In view of the unperfected status of a security interest and the voiding power of the debtor-in-possession, it is the

ORDER of the court that the security agreement by which the First National Bank of Williston claims a security interest in the chattels enumerated herein is deficient under section 41–09–10 of the North Dakota Century Code and, accordingly, First National Bank of Williston is unperfected against the superior claim of F.R. of North Dakota, Inc., the Debtor-in-Possession.

JUDGMENT MAY BE ENTERED ACCORDINGLY.