In re Leland **WOLSKY** and Karen Wolsky, Debtors.

Leland **WOLSKY** and Karen Wolsky, Plaintiffs,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

Bankruptcy No. 83–05094.
Adv. No. 86–7059.

United States Bankruptcy Court, D. North Dakota.

Oct. 28, 1986.

See also, Bkrtcy., 53 B.R. 751.

Roger J. Minch, Fargo, N.D., for debtors.

Charles J. Gilje, Carrington, N.D., for defendant.

William P. Westphal, Minneapolis, Minn., U.S. Trustee.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The matter before the Court is an action by the debtors, Leland and Karen Wolsky (Debtors), against the Federal Deposit Insurance Corporation (FDIC) to determine the validity of liens claimed by FDIC in the Debtors' trucks. The Debtors filed a Chapter 11 petition on February 17, 1983, and commenced this action on May 14, 1986, pursuant to section 506 of the Bankruptcy Code. A trial was held before the undersigned on October 16, 1986. Based upon stipulated facts and the evidence introduced at trial, the Court finds the material facts to be as follows:

## FINDINGS OF FACT

FDIC is a party to this action as receiver of the First National Bank of Carrington. The Debtors have, in the past, borrowed money from the First National Bank of Carrington. The only indication of current indebtedness are four partially illegible copies of promissory notes which are attached to FDIC's proof of claim in the amount of $152,542.03. Three of the notes are unsecured with the fourth, in the amount of $4,500.00, being secured by wheat, barley and sunflowers pursuant to a security agreement dated December 20, 1979. In the fall of 1980, Leland Wolsky discussed proposals with FDIC to pay off his debt to them. He paid FDIC $550,-000.00 but denies owing anything on a $72,-000.00 note currently held by FDIC. Pursuant to negotiations with FDIC, Leland Wolsky understood that FDIC would not foreclose if he gave FDIC the titles to his trucks to shore up FDIC's unsecured position.

Pursuant to the negotiations with FDIC, Leland Wolsky signed applications for the issuance of new titles on three 3½ ton trucks. The applications, and the titles issued in consequence thereof, accurately describe the trucks and list FDIC as the

lienholder. The Debtors remain in possession of the trucks.

The only security agreement before the Court is a "Consumer Goods Security Agreement" dated December 20, 1979, which grants to the First National Bank of Carrington a security interest in 16,000 bushels of wheat, 1,700,000 pounds of sunflowers, and 5,000 bushels of barley. The Bank supplied the security agreement prior to the handwritten description of the crops, the following language is found on the security agreement:

> The undersigned (hereinafter called "Debtor") hereby grants to THE FIRST NATIONAL BANK of CARRINGTON, CARRINGTON, NORTH DAKOTA 58421 (hereinafter called "Secured Party") a security interest in the following described property (hereinafter called "Collateral")

Thereafter the inserted description of the crops is found followed by the following preprinted language:

> together with all parts, accessories, repairs, improvements and assessions thereto now or hereafter and anytime made or acquired; and All property of every kind and description in which the Debtor has or may acquire any interest now or hereafter at any time in the possession or control of the Secured Party....

### Conclusions of Law

■ The principal issue before the Court is whether FDIC's claimed security interest in the Debtors' three trucks is valid. Section 41–09–16 of the North Dakota Century Code provides that a security interest does not attach unless all of the following take place:

a. The collateral is in the possession of the secured party pursuant to agreement, or that the debtor has signed a security agreement that contains a description of the collateral....

b. Value has been given.

c. The debtor has rights in the collateral.

N.D.Cent.Code § 41–09–16 (Supp.1985) (U.C.C. § 9–203).

FDIC does not have possession of the Debtors' trucks. Therefore, pursuant to section 41–09–16(1)(a), FDIC's alleged security interest could attach to the trucks only if "the debtor has signed a security agreement which contains a description of the collateral".

The only security agreement in evidence is the document identified as a "Consumer Goods Security Agreement". Inserted in the agreement is a description of wheat, sunflowers and barley, as collateral. The FDIC asserts that the preprinted language which grants a security interest in "All property of every kind and description which the Debtor has or may acquire any interest ...", is a sufficient description to allow a security interest in the trucks to attach. Although a general collateral description in a financing statement may be sufficient to put a third party on notice, and thus perfect a security interest, greater particularity is required for a description of collateral in a security agreement. *In re F.R. of North Dakota, Inc.*, 54 B.R. 645, 649 (Bankr.D.N.D.1985); *In re Munzenreider Corp.*, 34 B.R. 82, 84 (Bankr.M.D. Fla.1983). The issue of perfection does not even arise until one first establishes that a valid security interest has attached.

A collateral description in a security agreement must be reasonably specific for a security interest to attach because a security agreement is the only documentation on which immediate and third parties have to rely in determining whether particular collateral is encumbered. When terms of a security agreement are vague or imprecise, the terms are strictly construed against the drafter consistent with fundamental rules of contract construction. N.D.Cent.Code § 9–07–19 (1975); *In re F.R. of North Dakota, Inc.*, 54 B.R. at 649.

Courts are generally reluctant to allow imprecise language on a security agreement to create a valid security interest. A Wisconsin bankruptcy court has held that a financing statement which read that all farm personal property was subject to a security interest, was not sufficient notice to cover any property. The Court found that the description approaches a super ge-

neric term that is not sufficient to reasonably indentify the collateral to the security agreement. *In re Becker,* 53 B.R. 450 (W.D.Wis.1985). The same rationale would apply to security agreements where more specificity is required. Likewise, a Minnesota Court has recently held that a description of collateral in a security agreement as "all property listed on Exhibit A attached hereto, together with any property of the debtor acquired after the date of the security agreement", was not a sufficient description to create a security interest in accounts receivable. *Worldwide Tracers, Inc. v. Metropolitan Protection, Inc.,* 373 N.W.2d 839, 41 U.C.C.Rep.Serv. 1508 (Minn.Ct.App.1985). In addition, the Second Circuit has held that the use of the word "equipment" in a security agreement is not effective to include automobiles belonging to a debtor as property subject to the security agreement. *In re Laminated Veneers, Inc.,* 471 F.2d 1124, 1125 (2d Cir. 1973). Therefore, this Court concludes that the December 20, 1979 consumer security agreement does not sufficiently describe the debtors' trucks as collateral and thus is not a valid basis on which to rely in asserting that a security interest in the trucks did attach.

The FDIC also asserts that applications which the Debtor agreed he signed, and which listed FDIC as the lienholder, for transfer of certificate of titles on the trucks are sufficient to meet the writing requirement for a security interest to attach. Courts disagree as to whether a title application or a Certificate of Title listing a lienholder create a security interest in vehicles. Some courts have held that applications for a certificate of title or the certificate of title itself listing lienholders are insufficient to create a security interest. *In re E.F. Anderson & Son, Inc.,* 12 U.C.C.Rep.Serv. 567 (D.Ga.1973) (held that a security interest does not attach unless the security agreement includes a "grant" in writing); *In re Harmon,* 6 U.C.C.Rep.Serv. 1280 (D.Conn.1969). Other courts, however, have held that an application for transfer of title which lists a particular lienholder on the application meets the writing requirement for a security interest

to attach. *Bay State Drywall, Inc. v. Chicopee Sav. Bank,* 32 U.C.C.Rep.Serv. 1315, 385 Mass. 17, 429 N.E.2d 1138 (Mass.1982); *In re McCormick,* 24 B.R. 718 (Bankr.E.D. Mich.1982) (application for a title certificate consisted a security agreement); *Peterson v. Ziegler,* 39 Ill.App.3d 379, 350 N.E.2d 356 (Ill.App.Ct.1976) (application for a certificate of title for a house trailer, which listed a lienholder on the application, created a security interest).

Although courts are not in accord as to whether an application for a title certificate and/or a title certificate listing a lienholder are sufficient for a security interest to attach, the law on this issue is quite clear in the Eighth Circuit, where security agreements have been much more strictly construed than in other circuits. In *Shelton v. Erwin,* the Eighth Circuit addressed the issue of whether an application for a certificate of title and a certificate of title issued in consequence thereof, both listing a particular individual as lienholder, satisfied Missouri's requirement for a security interest to attach (Missouri has adopted section 9–203 of the Uniform Commercial Code as has North Dakota). The Eighth Circuit, in referring to the Uniform Commercial Code definition of a security agreement as "an agreement which creates or provides for a security interest", held that the definition requires language in the agreement actually conveying a security interest. *Shelton v. Erwin,* 472 F.2d 1118, 1120 (8th Cir. 1973), U.C.C. 9–105–(1). The court held that the notation on the title application that a lien existed in favor of the particular individual was not sufficient to "grant" a security interest. The court stated that the result reached in *Shelton* was perhaps harsh, particularly when the facts indicated that the parties intended and attempted to create a security interest. Nevertheless, the court said that "the result is commanded not by fireside equities but by the necessary technicalities inherent in any law governing commercial transactions". *Id.,* quoting *Safe Deposit Bank and Trust Co., v. Berman,* 393 F.2d 401, 402, 404 (1st Cir.1968).

North Dakota's definition of a security agreement is identical to that of Missouri

**530**

and the U.C.C.N.D.Cent.Code § 41–09–05 (Supp.1985) (U.C.C. 9–105). In the case at bar, the evidence before the Court has not established the existence of any written language actually conveying a security interest from the Debtors to FDIC. Therefore, the Debtors have not signed a security agreement describing the truck and the initial requirement for a security interest to attach, that FDIC either have possession or that the Debtor has signed a security agreement which contains a description of the collateral, has not been met.

Accordingly, and for the reasons stated herein, IT IS ORDERED that Federal Deposit Insurance Corporation does not have a security interest in the Debtors' three 3½ ton trucks. IT IS FURTHER ORDERED that the Federal Deposit Insurance Corporation release its purported liens in all of the trucks so that the certificates of title to those trucks may be issued showing no lien in favor of the Federal Deposit Insurance Corporation.

LET JUDGMENT BE ENTERED ACCORDINGLY.