Gardner, J.
On October 24, 2005, defendant Fafama Auto Sales (“Fafama”) of Hopedale, Massachusetts sold plaintiff Antonio Lopes (“Lopes”) a used 1997 Chevrolet van for $4,950.00. Both parties signed a bill of sale and a licensed dealership reassignment of title. The bill of sale required Lopes to pay $1,200.00 as a down payment and the balance in eight monthly installments of $468.00, without interest. The first installment was due November 24, 2005. The agreement warned, “The “buyer’ understand [sic] and agree that, in the event of [sic] his payment is late, the car above will be repossessed for nonpayments.” The agreement also contained a warranty for thirty days or 1,250 miles, whichever occurred first.
Lopes, a Rhode Island resident, submitted an application for registration and title certificate with that state’s division of motor vehicles. The application listed Fafama as sole lienholder.
Lopes brought the vehicle for inspection in Rhode Island on November 19, 2005. It was rejected for problems with the radiator, torque converter, and clutch. The inspection report listed the odometer at 159,536 miles, which was 4,857 more miles than the total miles listed on the bill of sale. The warranty had thus expired. Lopes thereafter contacted Fafama’s president, Fabio Silveira (“Silveira”), who told Lopes that Fafama would not address the issues discovered in the inspection report. When Lopes arrived at the dealership, Silveira refused to see him. On November 25, 2005, Lopes paid his first, and only, monthly installment payment.
On January 5,2006, Lopes paid $1,221.00 to a repair shop for repairs of items that included those problems discovered during the inspection. The vehicle then passed inspection on January 7, 2006. Finally, on January 19, 2006, Lopes paid an additional $2,443.00 to correct a transmission issue.
On January 27, 2006, Fafama attempted, unsuccessfully, to repossess the vehicle. The Milford police department informed Silveira that he had failed to follow statutory notice requirements. Although the vehicle remained in Lopes’ possession, Fafama filed an affidavit of repossession, dated January 30, 2006, with the Massachusetts registry of motor vehicles, claiming that the van had been “lawfully repossessed under the terms of the valid agreement and not in conflict with the existing laws of the Commonwealth of Massachusetts.”
On February 3, 2006, Fafama sent Lopes a letter under the heading, “Rights of Defaulting Buyer under the Massachusetts Motor Vehicle Installment Sales Act.” *278 The letter stated that Lopes was in default for nonpayment; that he could cure the default by paying $1,604.00 by February 24,2006 to Fafama as secured creditor; and that if Lopes did not cure by that date, Fafama might bring suit to recover the debt or repossess the vehicle. Having received no payments, Fafama hired New England Recovery, which repossessed the van on March 12, 2006.
Lopes sent a G.L.c. 93A demand letter to Fafama, demanding payment of his repair costs, legal fees, and return of his down payment and installment payment, for a total of $6,507.84. Fafama offered to settle for $1,100.00. Lopes rejected the offer and brought suit on May 7,2008 for breach of contract, breach of warranty, and violation of G.L. c. 93A[1] The trial was jury waived. Finding that Lopes brought the vehicle’s defects to Fafama’s attention only after the warranty had expired, the judge rejected Lopes’ breach of contract and warranty claims. The judge also rejected Lopes’ argument that because Fafama was not licensed as a sales finance company permitted to enter retail installment contracts under G.L.c. 255B, (a) the parties’ agreement was void, (b) Lopes was released from the contract's requirements, and (c) Fafama’s repossession was unlawful. Finally, the judge ruled that even if Fafama had violated G.L.c. 255B, such violation would not bar Fafama’s recovery of the outstanding debt or its repossession of the vehicle.
Lopes filed this Dist./Mun. Cts. R. A. D. A, Rule 8C, appeal, arguing that Fafama’s failure to register under G.L.c. 255B, §2 not only voided the contract, but also prevented Fafama from repossessing the vehicle under G.Lc. 255B, §§20A and 20B.
l.The trial judge did not err in ruling that, assuming G.L.c. 255B applies, Fafama’s failure to obtain a license under that chapter did not void the contract.
General Laws c. 255B governs retail installment sales of motor vehicles. Section 2 provides that, with the exception of institutions not here relevant, “[no] person shall engage in the business of a sales finance company without first obtaining from the commissioner [of banks] a license to carry on said business.” Specific remedies for violations are scattered throughout the statute. See G.L.c. 255B, §21 (violation of chapter punished by fine or imprisonment); G.L.c. 255B, §22 (violation of §§9-14 bars recovery of finance, delinquency, collection, or refinancing charge); G.L.c. 255B, §6 (violations of chapter as violation of G.Lc. 93A). The statute is silent, however, on the effect violations have on the underlying contract.
As a general rule, Massachusetts courts are reluctant to assume, in the absence of a specific legislative mandate, that the Legislature intended to effect a forfeiture of private contractual rights. Valley Stream Teachers Fed. Credit Union v. Commissioner of Banks, 376 Mass. 845, 852 (1978) (credit union’s violation of G.L.c. 171, §16 in failing to obtain approval of Commissioner of Banks for loan did not render void its contractual obligation). Decisions further “warn against the sentimental fallacy of piling on sanctions unthinkingly once an illegality is found.” Town Planning & Eng’g Assocs., Inc. v. Amesbury Specialty Co., 369 Mass. 737, 746 (1976). See Baybank v. Dirico, 1996 Mass. App. Div. 30, 32. Under the applicable standards set *279 out in Town Planning & Eng’g Assocs., Inc.,[2] it is clear that the “vector of considerations” supports the trial court’s ruling that the contract was enforceable against Lopes. Id. at 746. Principal among these considerations is the fact that Lopes would enjoy an undeserved windfall if the contract were declared void. Baybank, supra at 33. Further, G.L.c. 255B is a consumer protection statute that affords purchasers of motor vehicles under retail installment sales contracts certain rights and remedies, including a defaulting buyer’s right to notice of default and to the redemption of the motor vehicle after repossession. See Marine Midland Bank, NA v. Moran, 1994 Mass. App. Div. 167, 168. Although Lopes is correct that Fafama, in failing to obtain a license, bypassed the Commissioner’s application review of its “financial responsibility, character, reputation, integrity and general fitness,” G.L.c. 255B, §2, the consumer protection policy underlying the statute would not be defeated by enforcing the contract. Nowhere does Lopes argue that, apart from its lack of a license, Fafama violated any of the above notification rights, or any other of the buyer’s rights, under G.L.C. 255B.
2. The trial judge did not err in concluding that Fafama could repossess the vehicle under the contract.
Fafama held an enforceable security interest in the vehicle. For a security interest to attach and become enforceable against a debtor, value must be given; the debtor must have rights in the collateral (or the power to transfer those rights); and at least one of a number of other conditions must be met as set forth in G.L.c. 106, §9-203(b) (3). One of those conditions is that the debtor has authenticated a security agreement that describes the collateral. G.L.c. 106, §9-203 (b) (1-3). Each of these requirements was met here.
First, value was given by Fafama in agreeing to sell the vehicle and by Lopes, in return, by providing a down payment and promising to repay the balance. G.L.c. 106, §1-201(44) (d) (“[A] person gives ‘value’ for rights if he acquires them ... generally, in return for any consideration sufficient to support a simple contract.”). Second, Lopes took title to the vehicle. Third, a security agreement is “an agreement that creates or provides for a security interest.” G.L.c. 106, §9-102 (73). “The [C] ode does not require the use of any magic words in order to create a security interest.” Front Row Seating, Inc. v. New England Concerts, Ltd., 33 Mass. App. Ct. 945, 946-947 (1992), quoting HENSON, SECURED TRANSACTIONS UNDER THE UNIFORM COMMERCIAL CODE 25 (1973). Further, the Supreme Judicial Court, in Baystate Drywall, Inc. v. Chicopee Sav. Bank, 385 Mass. 17 (1982), observed, “A debtor need not... sign a document designated ‘security agreement’ in order to satisfy the code requirement that the debtor sign a security agreement. A combination of documents may meet that requirement” (citation omitted). Id. at 22. In this case, the combina *280 tion of (1) the bill of sale signed by Lopes that specified Fafama’s right to repossess for nonpayment and (2) Lopes’ signed application for registration and title certificate with the Rhode Island division of motor vehicles that listed Fafama as sole lienholder constituted a security agreement signed by the debtor. There was a clear indication from the combined documents of an intent to create a security interest. See id. at 23.
Lopes’ argument that Fafama’s failure to obtain a license under G.L.c. 255B, §2 precluded it from repossessing the vehicle under §§20A and 20B is without merit. Security agreements are subject, in addition to Article 9 of the Uniform Commercial Code, to various regulatory statutes, including G.L.c. 255B. “A security agreement is not, however, totally void where such a regulatory statute has been violated. The result is whatever effect may be specified in the particular statute.” AT. STICKELLS, MANUAL ON UNIFORM COMMERCIAL CODE §9.55, at 307 (2d ed. 1989 & Supp. 2001). Lopes argues only that the contract was void. He does not dispute that his failure to pay installments constituted a default under G.L.c. 255B, §20A(a), and does not argue that Fafama breached the peace in repossessing the vehicle in violation of G.L.C. 255B, §20B(a) or G.L.c. 106, §9-609 (b) (2). Assuming that the parties entered into a retail installment contract, we have already held that the failure to obtain a license did not void the contract. Here, as before, absent direction from the Legislature that an unlicensed sales finance company may not enforce an otherwise valid security agreement, we find no error in the trial judge’s ruling. See Valley Stream Teachers Fed. Credit Union, supra at 859.
3. Regarding Lopes’ G.L.c. 93A claim, he merely notes in his brief that a G.L.c. 255B violation constitutes a G.L.c. 93A violation under G.L.c. 255B, §6, and then concludes that this Division should award him treble damages and attorney’s fees. These assertions do not rise to the level of appellate argument. Zora v. State Ethics Comm’n, 415 Mass. 640, 642 n.3 (1993); Soderlund v. Mosher, 2009 Mass. App. Div. 32, 33. Therefore, we decline to address them, except to note that, from our review of the record, Lopes failed to establish a causal connection between his alleged injuries and the per se G.L.c. 93A violation. Williams v. Perrault, 2011 Mass. App. Div. 180, 183, citing Herman v. Admit One Ticket Agency LLC, 454 Mass. 611, 615-616 (2009), and Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc., 445 Mass. 790, 797 (2006).
Judgment affirmed.
So ordered.

 Lopes’ complaint also alleged misrepresentation and violation of G.L.c. 90, §7Nl/4. Lopes did not request rulings of law on these claims. The judge found for Fafama on all counts.

 The relevant considerations include: the nature of the subject matter of the contract, the extent of the illegal behavior, whether that behavior was a material or only incidental part of the contract, the strength of the public policy underlying the prohibition, the extent to which effectuation of the policy would be defeated by a denial of the added sanction, how serious or deserved would be the forfeiture suffered by the plaintiff, and how gross or undeserved would be the defendant’s windfall. Town Planning & Eng. Assocs., Inc., supra at 745-746.