479 So.2d 551 (1985)
Carlton T. HOOVER
v.
MID-SOUTH EXPLORATION COMPANY, INC.
No. CA 84 0954.
Court of Appeal of Louisiana, First Circuit.
November 19, 1985.
*552 John C. Christian, New Orleans, for defendant-appellant.
James E. Kuhn, Denham Springs, for plaintiff-appellee.
Before LOTTINGER, COLE and CRAIN, JJ.
LOTTINGER, Judge.
This case involves the dissolution of a mineral lease on the ground of error as to the principal cause. From a judgment in favor of the plaintiff-lessor, defendants have appealed.

FACTS
On March 11, 1976 Carlton and Irene Hoover (collectively referred to as the Hoovers) entered into a mineral lease with Mid-South Exploration Company (Mid-South), acting through an independent lease broker, Arthur Hammond (Hammond). The lease was a standard form lease widely used at the time, and covered the minerals beneath the Hoovers' property in Livingston Parish, Louisiana.
Before the lease was signed, the terms of the lease were negotiated, with the parties now disagreeing as to exactly what was negotiated and what should have been included in the lease. The Hoovers contend that the royalty provision and the term were negotiated, while Hammond and Mid South contend that the only thing negotiated was a signing bonus, and nothing was discussed regarding the amount of royalties or the term of the lease. In any event, the lease, as signed, provided for a one-eighth royalty and a primary term of ten years.
Pursuant to the terms of the lease, Mid-South maintained its rights under the lease by the payment of annual delay rentals for seven years. These payments were deposited into a bank account in the Hoovers name, and were at no time refused or returned. After the seventh year, the property was included in a conservation unit formed by the Commission of Conservation for a well completed on neighboring lands. Thereafter, and at least through the date of trial, the Hoovers were paid and accepted royalty payments based on production from the well.
On December 22, 1980, while the above mentioned well was being drilled, and long before the royalty payments commenced, the Hoovers filed the present suit seeking recission of the mineral lease. Through a series of amending petitions, the Hoovers ultimately alleged that they were defrauded into signing the lease because of the misrepresentations of Hammond, who guaranteed them a royalty of one-sixth, but never amended the lease to reflect the change. To this Mid-South filed an exception of no cause of action alleging that the lease, as signed, is controlling. The trial judge referred the exception to the merits of the case, and the case went to trial. The trial judge did not specifically overrule the exception, but did so implicitly by granting judgment in favor of the Hoovers and declaring the lease null and void.

ASSIGNMENT OF ERRORS
From this judgment, both Mid-South and Hammond have appealed, alleging the following as errors by the trial court:
1. in not sustaining defendants' peremptory exception raising the objection of no cause of action;
*553 2. in allowing plaintiffs to introduce parole evidence to contradict the written terms of the mineral lease;
3. in not granting defendants' Motion to Dismiss after plaintiffs had closed their case in chief;
4. in holding that the mineral lease was null and void;
5. in not holding that plaintiffs had ratified the lease by their acceptance of rentals and royalties and were estopped from contesting the validity of same; and
6. in the alternative, not limiting plaintiffs' rights, if any to reformation of the lease instead of its recission.

ASSIGNMENT OF ERROR NO. 1
Appellants first contend that their peremptory exception raising the objection of no cause of action should have been sustained because the Hoovers are bound to the lease which they signed, and therefore a royalty of one-eighth, regardless of what was discussed or negotiated prior to their signing.
The peremptory exception raising the objection of no cause of action raises the question of whether the law affords any remedy to the plaintiff under the allegations of the petition. Elliott v. Merritt, 457 So.2d 1216 (La.App. 1st Cir.1984), writ denied 461 So.2d 315 (La.1984). For purposes of the exception, all well-pleaded facts in the petition are accepted as true. Lott v. Landor, 452 So.2d 1266 (La.App. 1st Cir.1984) writs denied, 458 So.2d 119, 125 (La.1984).
In the instant case, the Hoovers filed an original petition and three supplemental and amending petitions. The original petition alleged that the Hoovers were misled by Hammond as to the contents of the lease. In the first amending petition, the Hoovers added the contention that Hammond "guaranteed" them a one-fifth royalty which was not reflected in the lease. The second amending petition set forth the same allegations of misleading by Hammond, but provided that the Hoovers were guaranteed a royalty of one-sixth. In addition the Hoovers alleged fraud and misrepresentation on the part of Hammond. In their third amending petition the Hoovers set forth, as a fact, that Hammond agreed to amend the lease to provide for a royalty of one sixth, as well as allegations that Hammond was acting as agent for Mid-South. The petition further alleged intentional misrepresentations by Hammond and an intent to defraud the Hoovers of royalty revenues after they signed the lease.
Taking the facts alleged as true, Hammond made a number of misrepresentations and false "guarantees" to induce the Hoovers into signing the lease. The lease was never changed, as promised, and the lease did not reflect the true intentions of the Hoovers. This, coupled with the allegations of fraud and fraudulent intentions established a cause of action to have the lease, as a contract, rescinded on grounds of vitiated consent. See La.Civ. Code arts. 1819 through 1849.[1]

ASSIGNMENT OF ERROR NO. 2
Appellants next contend that parol evidence should not have been allowed to vary the terms of the mineral lease.
Under a longstanding jurisprudential rule, parol evidence is admissible when there are allegations of fraud, error or mistake, to show that the terms of the instrument are not the true intentions of the parties. Mitchell v. Clark, 448 So.2d 681 (La.1984); Daigle & Associates, Inc. v. Coleman, 396 So.2d 1270 (La.1981). This rule was recently codified by our Legislature in La.Civ.Code art. 1848, effective January 1, 1985. Therefore, since the Hoovers alleged fraud and misrepresentations on the part of Hammond and Mid-South, parol evidence was admissible to determine if there was any fraud or vice of consent involved in the agreement.
*554 Appellants contend that allegations of fraud are conclusions of law and not sufficient to support the introduction of parol evidence. As authority, they cite Succession of Guidry v. Bank of Terrebonne & Trust Co., 193 So.2d 543 (La.App. 1st Cir. 1966); and Day v. Smith, 216 So.2d 338 (La.App. 4th Cir. 1968). However, in those cases, the plaintiff had merely alleged fraud and had not, as in the present case, alleged underlying facts to establish the fraud. Thus, these cases are not controlling, and parol evidence was admissible in an attempt to establish the fraud or vitiated consent.
Appellants rely on the case of Tennessee Gas Transmission Co. v. Bayles, 74 F.Supp. 258 (W.D.La.1947), in which the court failed to allow parol evidence in light of allegations of fraud, because those allegations, when read in connection with the contract involved therein, were insufficient to justify the introduction of parol.
In the instant case, as we have concluded above, the factual allegations of fraud and misrepresentation contained in plaintiff's petition were sufficient to allow parol evidence on the issue of vitiated consent and the true intent of the parties. The Tennessee Gas Transmission case was decided on the same basis as the Guidry and Day, supra, casesthat the factual allegations were insufficient to justify the introduction of parol evidence. In the instant case, we have concluded that the allegations were adequate and no error was committed.

ASSIGNMENTS OF ERROR NOS. 3 AND 4
In these assignments of error, appellants contend that the Hoovers failed to establish fraud on the part of appellants, and that it was error to declare the mineral lease null and void. The Hoovers, on the other hand maintain that the lease was rescindable because their consent was obtained through error based on the misrepresentations of Hammond, as well as fraud perpetrated by Hammond and Mid-South.
The trial judge concluded that the one-sixth royalty consented to by the Hoovers and Hammond was the principal cause for the Hoovers entering into the contract, and that since they were misled by Hammond, their consent was vitiated through error. The trial judge then declared the lease null and void.
Consent of the parties is a requisite to the validity of a contract. La.Civ.Code art. 1779. It follows that there is no valid consent where it has been produced by error. La.Civ.Code art. 1819. To have the effect of invalidating a contract, the error must be in regards to the principal cause, or motive of the contract. La.Civ.Code arts. 1823 and 1825.
However, we conclude that the error, if any, in the present case is insufficient to rescind the mineral lease. Although the Hoovers testified that they were assured the royalty provision would be changed to one-sixth prior to public recordation of the lease, they did absolutely nothing to protect their interest and insure that the lease was so changed. They admitted signing the lease with full knowledge that it provided for royalties of one-eighth, and that nothing prohibited them for striking the one-eighth provision and inserting a one-sixth royalty. Under these circumstances, it cannot be said the royalty percentage was the principal cause or motive for entering into the contract.
In regards to the alleged "guarantees" by Hammond, the Hoovers simply failed in their burden of proof. Their testimony was directly contradicted by that of Hammond, who testified that the royalty provision was not discussed, and even if it were, he had no authority to grant a royalty in excess of one-eighth. He further testified that the only negotiations were in reference to the amount of the signing bonus, which was changed to the limit of his authority. In addition, had there been authority and an agreement for royalties of one-sixth, Hammond would have made the changes on the spot before obtaining the Hoovers' signature.
*555 Regarding the Hoovers allegations of fraud as applied to contracts, fraud is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantage to one party, or cause an inconvenience or loss to another. La.Civ. Code art. 1847. Two elements are essential to constitute legal fraud: the intention to defraud and loss or damage, or the strong possibility thereof. Hall v. Arkansas-Louisiana Gas Company, 368 So.2d 984 (La. 1979). Fraud must be established by clear and convincing evidence and exceptionally strong proof is required. Hall v. Arkansas-Louisiana Gas Company, supra.
The trial court made no findings regarding any fraud or fraudulent intentions by Hammond or Mid-South. We have reviewed the record and it is our opinion that the Hoovers failed to meet that strict burden.
Looking to the lease itself, since the Hoovers signed it, they are presumed to have consented to its contents. Tweedel v. Brasseaux, 433 So.2d 133 (La.1983); Action Finance Corporation v. Nichols, 180 So.2d 81 (La.App. 2d Cir.1965). It was incumbent on the Hoovers to insure that the lease terms were satisfactory prior to signing the lease, not afterwards. Nothing prohibited them from changing the provision themselves or withholding their signatures until the lease was satisfactory. The Hoovers were not forced into signing the lease, and we must construe the lease as entered into, not how either party would like it to read some seven years later.
Since we conclude that the trial judge erred in rescinding the mineral lease, we need not consider appellants' remaining assignments of error.
For the above and foregoing reasons, the judgment of the trial court is reversed, and judgment is rendered on behalf of defendant-appellants enforcing the mineral lease as written, at the cost of plaintiffs-appellees.
REVERSED AND RENDERED.
NOTES
[1] In 1984, the legislature amended and reenacted Titles III and IV of Book III of the Civil Code of Louisiana. Unless otherwise noted, any reference to the Louisiana Civil Code are references to the articles as they appeared at the institution of this case, prior to the revision.