673 So.2d 713 (1996)
R.L. SONNIER
v.
Misty Ann BOUDREAUX, et al.
No. 95 CA 2127.
Court of Appeal of Louisiana, First Circuit.
May 10, 1996.
*714 Larry P. Boudreaux, Thibodaux, for Plaintiff-Appellant R.L. Sonnier.
Camille A. Morvant, II, Thibodaux, for Defendant-Appellee Misty Ann Boudreaux.
Before WATKINS, FOIL and TANNER,[1] JJ.
WATKINS, Judge.
The plaintiff, Mr. R.L. Sonnier, appeals a trial court judgment failing to recognize a security interest he claims in an automobile titled to the defendant, Misty Ann Boudreaux. We reverse.
The instant dispute arose when the automobile, in which Mr. Sonnier claims a security interest, was involved in an accident which resulted in a total loss of the vehicle. Both the plaintiff and the defendant claimed the proceeds of a collision claim under an automobile insurance policy issued by Prudential Property and Casualty Insurance Company (Prudential) to Misty Ann Boudreaux. Ms. Boudreaux refused to recognize Mr. Sonnier's alleged security interest, claiming that the vehicle was a gift from Mr. Sonnier.
On September 20, 1994, Mr. Sonnier filed the instant suit, seeking recognition and enforcement of his security interest, naming Ms. Boudreaux and Prudential as defendants. In his petition, Mr. Sonnier asserts that he purchased a 1995 Plymouth automobile registered in the name of Ms. Misty Ann Boudreaux, subject to a security interest in his favor in the amount of the purchase price of $14,810.74. On June 17, 1994, the State of Louisiana issued a certificate of title recognizing his security interest. On June 25, 1994, Ms. Boudreaux was involved in a one car accident that resulted in total-loss damages to the vehicle.
Prudential issued a check payable to Ms. Boudreaux and Mr. Sonnier, in the amount of $9,923.68, representing eighty percent of the cash value of the automobile on the date of the loss, with the understanding that an additional check for the remaining twenty percent, $2,476.32, would be issued upon surrender of the certificate of title.
Mr. Sonnier alleges that he is entitled to a judgment against Ms. Boudreaux and Prudential, in the amount of $12,400.00, representing the total amount of the insurance proceeds. Mr. Sonnier also sought damages from Prudential on allegations of conversion and disposal of the salvage without his consent.[2]
Ms. Boudreaux denied any security interest in the vehicle and thereafter filed a reconventional demand seeking a judgment against Mr. Sonnier for $12,400.00, representing the value of the vehicle at the time of the loss, plus storage fees and damages for mental anguish and inconvenience.
The case was tried on May 30, 1995, and on August 2, 1995, the trial judge signed a judgment in favor of Ms. Boudreaux and against Mr. Sonnier, awarding her $14,810.74 plus interest from date of judicial demand, all costs and any and all fees resulting from the storage of the vehicle. Mr. Sonnier's demand *715 was dismissed at his cost. Mr. Sonnier appealed, alleging the following assignments of error:
1. The trial court erred in failing to recognize that Mr. Sonnier had a security interest on the vehicle.
2. The trial court erred in finding that it was Mr. Sonnier's intention to give or donate the vehicle to Ms. Boudreaux when it was purchased.
3. The trial court erred in rendering a money judgment against Mr. Sonnier instead of Prudential.

FACTS
Ms. Boudreaux and Mr. Sonnier met and became friends in late 1993. In December 1993, Mr. Sonnier and Ms. Boudreaux purchased a mobile home as co-owners. The home was placed next to Mr. Sonnier's home and Ms. Boudreaux resided there. At Mr. Sonnier's request, Ms. Boudreaux quit her day job at a day care center and her night job at a lounge. Ms. Boudreaux testified that Mr. Sonnier told her he wanted to provide for her because he "loved her like a daughter." On February 1, 1994, Mr. Sonnier and Ms. Boudreaux went shopping for a new vehicle for Ms. Boudreaux because the vehicle she owned was in need of repairs.[3] After finding a vehicle that Ms. Boudreaux liked at Morein Motors, she and Mr. Sonnier executed a retail installment contract with Ms. Boudreaux as the debtor and Mr. Sonnier as the co-debtor. Morein Motors was listed as the vendor/creditor. Ms. Boudreaux signed as the purchaser on the bill of sale and also signed the vehicle application acknowledging Morein Motor's security agreement on the vehicle. A certificate of title was subsequently issued with Ms. Boudreaux as the owner and Morein Motors as a lienholder. Insurance was obtained for the vehicle in Ms. Boudreaux's name and paid for by Mr. Sonnier.
On June 7, 1994, Mr. Sonnier paid off the lien in favor of Morein Motors. At that time he and Ms. Boudreaux executed another retail installment contract identical in form to the contract executed on February 2, 1994. The new contract listed Ms. Boudreaux as the debtor and Mr. Sonnier as the vendor/creditor. The contract was a demand note for the full price of the vehicle with a annual percentage rate of 10 percent. Ms. Boudreaux's signature appears on the contract over the words "Debtor Signature" located in the section of the contract dealing with insurance matters. Approximately one and one-half inches below her signature in the insurance section is another blank with the words "Debtor Signs." Ms. Boudreaux did not sign in this blank. Ms. Boudreaux also signed the application for vehicle title acknowledging a lien in favor of Mr. Sonnier. A certificate of title was issued on June 17, 1994, recognizing Misty Ann Boudreaux as the owner of the vehicle and Mr. Sonnier as the lien holder.
Shortly after the vehicle was paid off, the relationship between Mr. Sonnier and Ms. Boudreaux deteriorated. Ms. Boudreaux moved back to her parents' home when Mr. Sonnier's interest in her became romantic.
Ms. Carla LeFleur, the sales manager at Morein Motors, was present during the February 2 transaction and the June 7 transaction. Ms. LeFleur testified that on June 7, 1994, Mr. Sonnier paid off the lien in favor of Morein Motors and executed the retail installment contract with Ms. Boudreaux. She stated that she explained the documents to Ms. Boudreaux and that Ms. Boudreaux did not indicate that she did not understand them. Ms. LeFleur witnessed Ms. Boudreaux's signature on all the documents executed that day. Ms. LeFleur could not explain why Ms. Boudreaux's signature was on the insurance portion of the contract instead of at the "Debtor Signs" blank. Ms. LeFleur stated that she prepared the documents, and that it was unnecessary to sign in the insurance section as it was blank and did not require a signature.
Ms. Boudreaux testified that she never intended to give Mr. Sonnier a security interest *716 in the vehicle and that she believed it was a gift from Mr. Sonnier. She stated that she believed that the papers she signed on June 7, 1994, were necessary in order to release the vehicle from the previous mortgage. Ms. Boudreaux's mother and a friend of Ms. Boudreaux both testified that Mr. Sonnier told them that he was purchasing the vehicle for Ms. Boudreaux.
Mr. Sonnier testified that he did not intend to give the car to Ms. Boudreaux as a gift. He stated that he was purchasing it for her to use and that he intended to keep a security lien on the vehicle. Apparently, no payments were made by Ms. Boudreaux to Mr. Sonnier on the debt.
In oral reasons for judgment the trial court made the following pertinent findings of fact and conclusions of law:
This Court finds that the Plaintiff in this matter is a sixty-eight (68) year old man who entered into an amorous, but non-conjugal relationship with a nineteen (19) year old girl. There was little or no communications between the parties and what happened. The documents are mismanaged, confused and simply not clear. The Court can think of no other reason to place a vehicle in the name of this girl other than to give it to her as a gift, particularly in view of the fact that she was not working at the time. The Plaintiff insisted that she not work. He began to track her on a daily basis. He was overwhelmed by her. He was extremely interested in her. And she came by and signed a bunch of documents and decorated the paper with them. The decorations of the paper may have been at a later time and after the gift was given.
... I think she came back and signed documents carelessly and recklessly, and I think the second time she signed the documents... Unfortunately, in the insurance documents which might have led to something else, there appears to be no signature by the Defendant. The insurance policy appeared to have been taken out in her name, with her as the named insured in the policy. The policy does not reflect that there is a mortgage or lien on the policy in any way whatsoever ...[4]
The Plaintiff paid for the insurance policy,... and in obtaining the insurance he obtained an insurance policy without naming himself as a lien holder. I think the final say in this is that since he did not name himself as a lien holder in the policy it was not his intention at that time to have a lien on the vehicle.... I think that he did a foolish thing, and he didn't take care of his business....

LAW
The law applicable to this case is found in Chapter 9 of the Louisiana Commercial Laws, which became effective January 1, 1990. Because Louisiana's version of the Uniform Commercial Code was recently enacted, little jurisprudence has developed in this area of the law. Accordingly, our research encompasses cases from other jurisdictions which we look to for guidance and explanation, remembering that one of the purposes of the Uniform Commercial Code is to make uniform the law among the various jurisdictions.
Louisiana law defines a "security agreement" as "an agreement which creates or provides for a security interest." LSA-R.S. 10:9-105. Furthermore, at the time the parties herein executed the retail installment contract, LSA-R.S. 10:9-203 provided in pertinent part that:
(1) ... [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:
(a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral;
(b) value has been given; and
(c) the debtor has rights in the collateral.
* * * * * *
(3) Unless otherwise agreed a security agreement gives the secured party the *717 rights to proceeds provided by R.S. 10:9-306.[5]
The draftsmen of the UCC ascribed two purposes to the formal requirements of this section. One is evidentiary, preventing disputes as to precisely which items of property are covered, and the second purpose is in the nature of a statute of frauds, preventing the enforcement of claims based on oral representations. LSA-R.S. 10:9-203, Comments 3 and 5. The provisions of LSA-R.S. 10:9-203 do not require any particular form for a security agreement to be valid and enforceable. Accordingly, a writing or writings, regardless of label, which adequately describes the collateral, carries the signature of the debtor, and establishes that, in fact, a security interest was agreed upon, will satisfy the requirements of the statute. First National Bank & Trust Co. of Stillwater v. McKown, 867 P.2d 1342 (Okla.App., 9/21/93). Consequently, the location of the signature on the document is immaterial, where the intent of the party signing is to authenticate the writing. See Action Finance Corporation v. Nichols, 180 So.2d 81 (La.App. 2d Cir.1965).
All of the requirements of a valid enforceable security agreement are present in the agreement executed by the parties herein, with the exception of the questionable location of the debtor's signature. Because the insurance section where Ms. Boudreaux signed is blank, there was no need for her to sign. Furthermore, the blank where she signed indicated "Debtor's signature" and did not specify that it was for insurance purposes. Under these circumstances, we believe that the formal requirements of a security agreement are satisfied.
Ms. Boudreaux also contends that the documents she signed were misrepresented to her and consequently she did not know that she was signing a security agreement on her vehicle.
Initially, we point out that the defenses of fraud and error are affirmative defenses that must be specifically pleaded in a defendant's answer. LSA-C.C.P. art. 1005. The record herein reveals that Ms. Boudreaux did not affirmatively plead fraud or error, nor did she plead material misrepresentation as a vice to her consent in signing the security agreement. Although we seriously question whether Ms. Boudreaux has properly raised these defenses in the trial court, evidence of misrepresentation and error were admitted without objection, and we will therefore address those issues.
The thrust of Ms. Boudreaux's argument is that she believed that the vehicle was a gift from Mr. Sonnier; she did not realize she was signing a security agreement because she was told that she was signing documents to release the mortgage previously held by Morein Motors.
Consent of the parties is a requisite to the validity of a contract, and there is no valid consent where it has been produced by error. LSA-C.C. art. 1948. To have the effect of invalidating a contract, the error must be in regards to the principal cause or motive of the contract, and that cause was known or should have been known to the other party. LSA-C.C. art. 1949. Hoover v. Mid-South Exploration Co., Inc., 479 So.2d 551 (La.App. 1st Cir.1985).
Because Ms. Boudreaux signed the document, she is presumed to have consented to its contents. Hoover, 479 So.2d at 554. Although the law does not compel people to read or to inform themselves of the contents of instruments which they may choose to sign, except in certain exceptional cases, it holds them to the consequences, in the same manner and to the same extent as though they had exercised those rights. Ray v. McLain, 106 La. 780, 31 So. 315 (1901). Signatures to obligations are not mere ornaments, and it is incumbent upon the party signing such obligation to examine it before signing it in ignorance of its contents. Tweedel v. Brasseaux, 433 So.2d 133 (La.1983). To overcome the presumption of validity, the burden of proof is upon the party signing the *718 obligation to establish with reasonable certainty that he or she has been deceived. Id.
Although parol evidence is generally not admissible to vary or contradict the clear and unambiguous terms of an authentic act or written instrument, in the interest of justice, it may be admitted to prove a vice of consent. See LSA-C.C. art. 1848; Shreveport Great Empire Broadcasting, Inc. v. Chicoine, 528 So.2d 633, 635 (La.App. 2d Cir. 1988). However, misrepresentation does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. LSA-C.C. arts. 1953 and 1954; Hartford Acc. & Indem. Co. v. Louisiana Minority, Inc., 522 So.2d 1154, 1156 (La.App. 4th Cir.), writ denied, 523 So.2d 1339 (La.1988). Assuming that Mr. Sonnier told Ms. Boudreaux that he was purchasing the vehicle as a gift, it would have been simple for Ms. Boudreaux to read the unambiguous agreement which she signed to realize that she was obligating herself to a demand note and a security agreement on the vehicle. The language of the retail installment contract clearly states that Ms. Boudreaux is the debtor and Mr. Sonnier is the vendor/creditor and lien holder. Furthermore, the application for certificate of title signed by Ms. Boudreaux acknowledges the lien in favor of Mr. Sonnier, and the title issued to Ms. Boudreaux also indicates Mr. Sonnier as the lien holder. (See Baystate Drywall, Inc. v. Chicopee Savings Bank, 385 Mass. 17, 429 N.E.2d 1138 (01/08/82), wherein the court recognized a valid security agreement on a motor vehicle, notwithstanding that only the wife signed the security agreement, where the wife signed with the husband's authorization and the certificate of title revealed the bank's lien and the title certificate signed by the husband was a document acknowledging the existence of the security interest.)
Under the circumstances of this case, we believe that the trial court erred as a matter of law in finding that Mr. Sonnier did not have a valid security interest in Ms. Boudreaux's vehicle. Accordingly, the trial court judgment is reversed; we render judgment in favor of Mr. Sonnier recognizing his security interest in the vehicle and his entitlement to the proceeds of the collision insurance policy issued by Prudential. Costs of these proceedings are assessed against Ms. Boudreaux.
REVERSED AND RENDERED.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Prudential has not entered an appearance in this proceeding.
[3] Ms. Boudreaux's vehicle was eventually sold for $4,000.00, and the proceeds were used to pay the remaining debt on the vehicle and the repair bills previously incurred. Mr. Sonnier received the proceeds of the sale of the vehicle which Ms. Boudreaux believed would be applied to the purchase of a new car.
[4] Although the trial court apparently viewed the insurance policy, it was not entered into the record and does not form part of the record on appeal.
[5] LSA-R.S. 10:9-306(1) provides that "[i]nsurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement."