STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2021 CA 0696

SCOTT GURNEY, IN HIS CAPACITY AS THE TRUSTEE OF THE
GURNEY FAMILY TRUST

VERSUS

JOSH P. MCCOY

JUDGMENT RENDERED: **APR 0 4 2022**

* * * * * * *

Appealed from
The Nineteenth Judicial District Court
Parish of East Baton Rouge • State of Louisiana
Docket Number C670818 • Section 24

The Honorable Donald R. Johnson, Presiding Judge

* * * * * * *

<table>
<tr><td>Kyle M. Keegan<br>David A. Lowe<br>Baton Rouge, Louisiana</td><td>COUNSEL FOR APPELLANT<br>DEFENDANT—Josh P. McCoy</td></tr>
<tr><td>Carroll Devillier, Jr.<br>Danielle Borel<br>Baton Rouge, Louisiana</td><td>COUNSEL FOR APPELLEE<br>PLAINTIFF—Scott Gurney,<br>in his Capacity as the Trustee of<br>the Gurney Family Trust</td></tr>
</table>

* * * * * * *

BEFORE: MCCLENDON, WELCH, AND THERIOT, JJ.

McClendon J. concurs in result

**WELCH, J.**

In this suit on a promissory note, the defendant, Josh P. McCoy, appeals a summary judgment granted in favor of the plaintiff, Scott Gurney, in his capacity as the Trustee of the Gurney Family Trust, entering judgment against Mr. McCoy for principal, interest, and late fees, as well as a subsequent judgment rendered in furtherance of that judgment for attorney fees, costs, and judicial interest. For reasons that follow, we reverse the summary judgment, vacate the subsequent judgment, and remand for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Gurney is the trustee of the Gurney Family Trust, a trust established under the laws of the State of California (hereinafter collectively referred to as "Gurney"). Mr. McCoy is an individual of the full age of majority domiciled in East Baton Rouge Parish. On October 25, 2015, Mr. McCoy signed a promissory note in favor of Gurney ("the note"). The note was for the principal amount of $750,000.00, and had an interest rate of 12% per year, the annual interest each year being $90,000.00, payable at $22,500.00 per quarter year, totaling $180,000.00 for the entirety of the note. Pursuant to the note, Mr. McCoy was obligated to make payments to Gurney of $22,500.00 in quarterly interest, with the first of eight interest payments due by February 1, 2016, with principal payable in part or in whole. The payment of any unpaid principal was due on or before the maturity date of October 25, 2017. Additionally, the note provided that Mr. McCoy was obligated to pay attorney fees and costs of the holder of the note in the event it was necessary to employ an attorney to collect the promissory note.

On June 25, 2018, Gurney instituted this proceeding, asserting that Gurney was the holder of the note, that Mr. McCoy had failed to make all required payments due under the note, and that Mr. McCoy was in default. Gurney sought judgment for the principal amount of $711,275.00, accrued and unpaid interest in

2

the amount of $90,000.00, late fees in the amount of at least $40,063.35, legal interest until paid, attorney fees, and all costs for the proceeding.

Mr. McCoy filed an answer with affirmative defenses and a reconventional demand. Essentially, Mr. McCoy asserted that the note was executed in favor of Gurney as part of a larger agreement between the parties entered into on October 15, 2015, which involved other related transactions and their shared ownership interests in other entities, *i.e.*, Blackwater Farms, Inc., Deer Dynasty Properties, LLC, and Deer Dynasty Ranch, LLC, and which concerned the ownership of immovable property used for hunting and a lodge that was constructed on that property ("the October 15, 2015 agreement"). Mr. McCoy further asserted that, pursuant to the October 15, 2015 agreement, he sold his membership interests in these other entities to Gurney in consideration for (1) a lifetime personal servitude over the immovable property owned by the entities, along with the ability to stay on that immovable property any day that Gurney was not present on the property, and (2) Gurney's loan to him, as represented by the note.

According to Mr. McCoy, Gurney began to breach the October 15, 2015 agreement around November 2016 by failing to honor the lifetime personal servitude it granted to Mr. McCoy. Thereafter, Mr. McCoy ceased making payments on the note due to this breach, as the servitude provided a portion of the consideration for the note. Mr. McCoy also asserted that Gurney failed to disburse the entire principal sum of the note and that it failed to pay him the sum of $300,000.00, which was due to him under one of the related transactions between the parties and their ownership interests in Deer Dynasty Properties, LLC. Therefore, Mr. McCoy sought damages for Gurney's breach of the note, his breach of the October 15, 2015 agreement by failing to honor the lifetime personal servitude, and Gurney's failure to pay Mr. McCoy all sums owed to him pursuant to the October 15, 2015 agreement and the note.

3

Thereafter, Gurney filed a motion for summary judgment, seeking judgment against Mr. McCoy for the amounts owed pursuant to the note. Specifically, Gurney sought judgment against Mr. McCoy in the principal amount of $711,274.97, accrued and unpaid interest in the amount of $90,000.00, and late fees in the amount of $40,063.35. In addition, Gurney sought attorney fees in the amount of $59,463.95, expenses and costs of this proceeding in the amount of $1,844.95, and costs and judicial interest from June 25, 2018 (the date of filing of this suit on the note) through satisfaction of judgment. Mr. McCoy opposed the motion, asserting that there were issues of fact as to its defenses and reconventional demand, i.e. Gurney's breach of the note, its breach of the October 15, 2015 agreement, and failure and/or want of consideration, which precluded summary judgment.

After a hearing, the trial court signed a judgment on April 1, 2020, granting the motion for summary judgment and entering judgment in favor of Gurney and against Mr. McCoy in the principal amount of $711,274.97, plus accrued and unpaid interest in the amount of $90,000.00, and late fees in the amount of $40,063.35. The judgment further provided that the parties were to contact the trial court to have a hearing to determine whether attorney fees and costs would be awarded, and if so, the amounts.[1]

Thereafter, Gurney filed a motion to tax attorney fees, costs, and judicial interest. After a hearing, the trial court signed a judgment on March 2, 2021 in favor of Gurney and against Mr. McCoy, granting the motion and entering judgment against Mr. McCoy for attorney fees in the amount of $73,015.00, court costs and fees in the amount of $3,983.48, and deposition costs in the amount of

---

[1] Mr. McCoy filed an application for supervisory writs seeking review of this judgment. This Court denied the writ application on the basis that once a judgment containing proper decretal language was rendered on the remaining issue of attorney fees and costs, the judgment would constitute a final appealable judgment, and that Mr. McCoy would be entitled to file a motion for appeal therefrom. See **Scott Gurney, in his capacity as Trustee of the Gurney Family Trust v. Josh P. McCoy**, 2020-1129 (La. App. 1st Cir. 2/18/21)(*unpublished writ action*).

4

$2,102.10, plus judicial interest from October 25, 2017 until satisfaction of the April 1, 2020 judgment.

Mr. McCoy has appealed, challenging both the judgment granting summary judgment and the judgment granting the motion to tax attorney fees, costs, and, judicial interest. With respect to the summary judgment, Mr. McCoy asserts that the trial court erred in granting summary judgment because there were genuine issues of material fact regarding Gurney's breach of the October 15, 2015 agreement, which resulted in a failure of consideration on the note, and Gurney's failure to disburse the entire principal amount of the loan, which resulted in a want or lack of consideration. Mr. McCoy also asserts that Gurney failed to establish there were no genuine issues of material fact relating to the amount of principal, interest, and late fees to which it claimed it was entitled.

As to the judgment awarding attorney fees, costs, and judicial interest, Mr. McCoy asserts that since summary judgment was inappropriately granted, the trial court also erred in awarding any attorney fees, costs, and judicial interest. Alternatively, Mr. McCoy asserts that the award of attorney fees was unreasonable and improperly included attorney fees incurred by Gurney in defense of the reconventional demand. He also asserts that the award of costs included costs to which Gurney was not entitled, and that the judicial interest awarded was inappropriate, as contractual interest had already been awarded.

## LAW AND DISCUSSION

A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. **Johnson v. Evan Hall Sugar Cooperative, Inc.**, 2001-2956 (La. App. 1st Cir. 12/30/02), 836 So.2d 484, 486. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that

there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. **In re Succession of Beard**, 2013-1717 (La. App. 1st Cir. 6/6/14), 147 So.3d 753, 759-760. The initial burden on a motion for summary judgment is on the mover to show that no genuine issue of material fact exists and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3) and (D)(1). The burden then shifts to the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.* If the adverse party fails to do so, then summary judgment shall be granted. *Id.*

Summary judgment is an appropriate procedural device to enforce a promissory note when the defendant establishes no defense against enforcement. See **American Bank v. Saxena**, 553 So.2d 836, 845-846 (La. 1989). In a suit to collect on a promissory note, once the plaintiff, as holder of a promissory note, proves the maker's signature, or the maker admits it, the holder has made out his *prima facie* case by mere production of the note; the burden then shifts to the defendant to prove the existence of a triable issue of material fact and/or any affirmative defenses. **American Bank**, 533 So.2d at 842; see also **Hancock Bank of Louisiana v. C & O Enterprises, LLC**, 2014-0542 (La. App. 1st Cir. 12/23/14), 168 So.3d 595, 598-599, writ denied, 2015-0621 (La. 5/22/15), 171 So.3d 251. Failure of consideration is an affirmative defense that may be asserted by the defendant. See La. C.C.P. art. 1005; **Winston v. Hall**, 2017-1097 (La. App. 1st Cir. 4/6/18)(*unpublished*), 2018 WL 1663020 at *3.

6

Additionally, in a suit on a promissory note by the payee against the maker, the payee is entitled to the presumption that the instrument was given for value received. However, the presumption is rebutted if the maker casts doubt upon the consideration. Once the maker casts doubt upon the issue of consideration, the burden shifts to the payee to prove consideration by a preponderance of the evidence. **Sonnier v. Gordon**, 50,513 (La. App. 2nd Cir. 4/13/16), 194 So.3d 47, 54. Notably, however, there is a difference between the affirmative defense of failure of consideration and the defense of want or lack of consideration. The former concedes that there was consideration for the instrument in its inception, but alleges that the consideration has wholly or partially ceased to exist. *Id.* The latter defense, however, asserts that consideration was not given for the note. Thus, the defendant is merely producing evidence which rebuts the plaintiff's contention that consideration was given for the note. *Id.* An affirmative defense or special plea is not necessary to permit the introduction of evidence which tends to rebut evidence introduced by the plaintiff in the proof of his case. *Id.*

Gurney, in support of his motion for summary judgment, submitted: a copy of the petition with the affidavit of verification of Gurney and the October 25, 2015 note attached thereto; Mr. McCoy's answer to the petition; excerpts from Mr. McCoy's deposition with attachments; and an affidavit of correctness executed by Gurney.

The factual allegations of the petition were set forth above. The October 25, 2015 note attached thereto set forth the following terms: (1) Mr. McCoy promised to pay Gurney the principal sum of $750,000.00; (2) the note would bear interest at a rate of 12% per year based on $750,000.00, thus the annual interest each year would be $90,000.00, at $22,500.00 per quarter year, and would total $180,000.00 for the entirety of the note; (3) commencing on the first day of the month after the third month/first quarter after the note's date, and every successive quarter for two

years, Mr. McCoy would pay $22,500.00 in quarterly interest and could pay principal in part or in whole, and any unpaid principal would be paid on or before the maturity date; (4) the maturity date was October 25, 2017 and on that date, Mr. McCoy would pay any and all unpaid principal on the note, together with the eighth of eight interest payments; (5) late fees of 5% of the entire amount outstanding would be owed by Mr. McCoy if any payment was not paid within thirty days of the due date; (6) the proceeds of the loan were not to be used by Mr. McCoy for personal, family, or household purposes, but instead for the development of residential real estate; (7) Mr. McCoy could prepay any obligations under the note without penalty by making payment in full of the then-remaining unpaid principal, but such payment would not affect his obligation to pay the interest totaling $180,000.00; (8) Mr. McCoy waived presentment, protest, demand, and notice; (9) if it was necessary to employ counsel to collect the note, Mr. McCoy agreed to pay reasonable attorney fees and costs; (10) default was defined and upon default, any unpaid principal balance would be due and payable without presentment, demand, or notice; and (10) the note was secured by a mortgage on Mr. McCoy's interest in sale proceeds by Deer Dynasty Properties, LLC and/or Deer Dynasty Ranch, LLC of certain land, and Mr. McCoy would grant a mortgage on all immovable property purchased with the money lent through the note. The note bears the signature of "Josh Paul McCoy" and provides that it was executed on and to be effective as of October 25, 2015.

According to Mr. McCoy's deposition, he had been working as a builder on construction projects, through his company, Dynamic Group, LLC, when he came upon an opportunity to participate in the development and construction of houses in Sunset Lakes subdivision in Port Allen, Louisiana. Mr. McCoy purchased 12-15 lots in Sunset Lakes, and the purchase of those lots was mostly funded by money that he borrowed from Gurney. The houses in Sunset Lakes were sold as they

8

were built, and by the end of 2016, all of the houses had been built and sold. Mr. McCoy admitted that the loan from Gurney essentially operated like a construction line of credit in that he would make draws against the loan and Gurney would pay based on the status of the construction.[2] In addition to the purchase of land and construction of houses in Sunset Lakes, the money that Mr. McCoy borrowed from Gurney also funded a project in Denham Springs, Louisiana, which involved the purchase of raw land for the development of Magnolia Mound subdivision and the purchase of two lots in Watson, Louisiana. According to Mr. McCoy, no houses were built in Magnolia Mound subdivision, as its development stopped with the flooding in 2016 because the market went down and because Mr. McCoy decided that he wanted to end his dealings with Gurney. Mr. McCoy understood that the money from Gurney was a loan and that he was obligated to pay it back. However, he stated that "it wasn't just a loan agreement" rather it was part of a "global deal" based on his rights and ownership in other entities involving Gurney.

After Mr. McCoy got an email from Gurney that Mr. McCoy would not be able to go to the property that was the subject of the servitude, Mr. McCoy realized that Gurney was dissatisfied with the servitude agreement and that there were going to be issues involving his use of the servitude. At that point, Mr. McCoy determined that if Gurney was "going to breach our agreement," then he would let Gurney "give [McCoy his] servitude money of six hundred thousand, buy [him] out of [the servitude], and [they would] settle up the difference on the loan." In addition, Mr. McCoy decided that he was not going to re-pay the funds he had drawn on the note and that as soon as Magnolia Mound was "paid," they "would settle everything out."

Mr. McCoy admitted that he signed the note for $750,000.00 in favor of

---

[2]  We note that, although Mr. McCoy admitted that the loan from Gurney operated like a construction line of credit, he never stated or admitted that such arrangement was intended by the parties.

9

Gurney, that he complied with all payments due under the note until November 2016, and that he stopped paying the note in November 2016, when his rights under the servitude agreement were withheld. Mr. McCoy also admitted that the note did not make his payment obligation contingent on the servitude rights. Mr. McCoy stated that he made interest payments totaling $90,000.00 and that had no reason to dispute the amount of the draws made on the loan.

According to Gurney's affidavit, Scott Gurney stated that he was trustee of the Gurney Family Trust and that he was the holder of, owner of, and entitled to enforce the note dated October 25, 2015 in the original principal amount of $750,000.00 bearing interest of 12% per year, which was executed by Mr. McCoy. Gurney stated that the loan operated as a construction line of credit and that Mr. McCoy received draws in the principal amount of $711,274.97. Under the terms of the note, Mr. McCoy was obligated to pay eight quarterly interest payments of $22,500.00 and to pay the note on the two year anniversary of the note's date. Mr. McCoy made only the first four interest payments, had not made any payments on principal, was in default, and was indebted to Gurney for the principal sum of $711,274.97, plus accrued and unpaid interest of $90,000.00, late fees of $40,063.35, plus reasonable attorney fees and costs. To date, Gurney had incurred attorney fees in the amount of $59,688.88 and costs of $1,844.95 related to the collection of the note.

Herein, we find that Gurney produced the note and that he established, with the documents in support of his motion for summary judgment, he was the holder of the note, that Mr. McCoy signed the note, that Mr. McCoy received money pursuant to the note totaling $711,274.97, that Mr. McCoy made only the first four interest payments, had not made any payments on principal, was in default, and was indebted to Gurney for the principal sum of $711,274.97, plus accrued and unpaid interest of $90,000.00, late fees of $40,063.35, plus reasonable attorney

fees and costs. Therefore, we find that Gurney met his initial burden of establishing a *prima facie* case for enforcement of the note; thus, the burden then shifted to Mr. McCoy to establish the existence of a triable issue of material fact and/or any defenses.

In opposition to the motion for summary judgment, Mr. McCoy offered his own affidavit, along with the October 15, 2015 agreement and emails between the parties attached thereto. According to Mr. McCoy's affidavit, in January 2012, he formed Blackwater Farms, Inc. ("Blackwater"). Initially, 100 shares of stock were issued in Blackwater and he owned all 100 shares. Blackwater was incorporated for the initial purpose of providing comprehensive deer hunting facilities to the public. In order to accomplish this purpose, around February 17, 2012, Blackwater purchased approximately 300 acres in Livingston Parish for $1,100,000.00 from Leonard Jerry Kinchen and L. Jerry Kinchen, Inc. Blackwater paid $50,000.00 in cash to purchase the 300 acres and financed the remainder of the purchase price through a promissory note in the amount of $1,050,000 at 6% interest (the "Kinchen note").

Around October 25, 2013, Mr. McCoy executed a resolution with Gurney wherein Gurney purchased 50 of the 100 shares of Blackwater stock for the sum of $146,982.52, thereby making Gurney 50% owner of Blackwater and Mr. McCoy the owner of the remaining 50% of Blackwater. Gurney "took out" the Kinchen note and became the lender on the 300 acres, and in connection therewith, Blackwater executed a promissory note in favor of Gurney in the amount of $1,020,721.00, with interest payable at prime plus 2.75% over 240 months (the "300 acre note"). Since Mr. McCoy and Gurney were equal shareholders in Blackwater at that time, they agreed to make equal payments on the 300 acre note. Mr. McCoy made alternating monthly payments on the note and Gurney claimed that he made alternating monthly payments on the note.

In January 2014, Blackwater purchased an additional 250 acres, which were contiguous to the 300 acres, from Leonard Jerry Kinchen and Sheila Gill Kinchen for $525,000.00, and the purchase price was financed by Gurney. In connection therewith, Blackwater executed a promissory note in favor of Gurney in the amount of $553,898.00, with interest payable at prime plus 2.75% over 240 months ("the 250 acre note"). Since McCoy and Gurney were equal shareholders in Blackwater at that time, they agreed to make equal payments on the 250 acre note. Mr. McCoy made alternating monthly payments on the note and Gurney claimed that it made alternating monthly payments on the note.

In June 2014, Blackwater decided to build an 8-bedroom lodge on the 550 acres and anticipated that it would need $600,000.00 to build the lodge. Gurney loaned $600,000.00 to Blackwater for this purpose and the lodge was subsequently built. Additionally, at this time, Mr. McCoy agreed to sell 25% of his shares of stock in Blackwater to Gurney for $300,000.00. In order to effectuate this sale, Blackwater issued an additional 100 shares of stock, which were sold to Gurney for $600,000.00. However, Gurney never paid any money to Blackwater or Mr. McCoy for these additional shares of stock.

Following the issuance of the additional 100 shares of stock, Mr. McCoy owned 25% of Blackwater through his 50 shares of stock and Gurney owned 75% of Blackwater through its 150 shares of stock. Gurney and Mr. McCoy placed a value of $300,000.00 on 50 shares of stock in Blackwater at that time, and thus, the total 200 shares of stock in Blackwater were worth $1,200,000.00 at that time. In connection with the issuance of the additional 100 shares of stock to Gurney, Mr. McCoy retained the right for five years to repurchase from Gurney 50 shares of stock in Blackwater for $300,000.00.

Additionally, in 2014, at the suggestion of Gurney, it was proposed that two limited liability companies be organized and that Blackwater's assets and liabilities

be transferred to these new limited liability companies. Based on this suggestion, Gurney and Mr. McCoy organized Deer Dynasty Ranch, LLC and Deer Dynasty Properties, LLC. At the time of its organization, Mr. McCoy owned 25% membership interests in Deer Dynasty Ranch, LLC and in Deer Dynasty Properties, LLC and Gurney owned the remaining 75%. Blackwater then assigned all of its immovable assets and all of its movable assets and liabilities, including the 300 acre note and the 250 acre note, to Deer Dynasty Properties, LLC.

In 2015, negotiations began for the sale of Mr. McCoy's remaining 25% interests to Gurney because Mr. McCoy had decided to convert his interest in those entities into cash and to pursue a residential housing development instead. The terms of the sale of Mr. McCoy's interests were ultimately agreed upon, and Gurney and Mr. McCoy executed the October 15, 2015 agreement.

According to Mr. McCoy, pursuant to the October 15, 2015 agreement, he sold, conveyed, and transferred his 25% interest in Deer Dynasty Properties, LLC and Deer Dynasty Ranch, LLC to Gurney; thus, Gurney became 100% owner of the lodge and the membership interests in Deer Dynasty Properties, LLC and Deer Dynasty Ranch, LLC. Mr. McCoy's consideration for entering into the October 15, 2015 agreement consisted of a lifetime personal servitude on the lodge and the 550 acres, as well as a loan made by Gurney to him. Specifically with respect to the loan, funds equaling the approximate value of his 25% interests in Deer Dynasty Properties, LLC and Deer Dynasty Ranch, LLC, which totaled approximately $750,000.00, were to be transferred by Gurney to Mr. McCoy. Mr. McCoy would then repay those funds over time in exchange for Gurney granting him a lifetime servitude over the lodge and 550 acres. Mr. McCoy's obligation to repay the funds set forth in the October 15, 2015 agreement was conditioned upon Gurney honoring Mr. McCoy's lifetime servitude and complying with the terms of the October 25, 2015 note. Likewise, Gurney's duties to Mr. McCoy under the

servitude identified in the October 15, 2015 agreement were memorialized in the agreement. Thus, the net effect of the October 15, 2015 agreement was that the servitude formed the consideration for Mr. McCoy's execution of the note and his obligation to repay the $750,000.00 "purchase price" set forth in the note for his 25% interest in the lodge, Deer Dynasty Properties, LLC and Deer Dynasty Ranch, LLC.

But for the lifetime servitude over the lodge and the 550 acres, Mr. McCoy would not have entered into the October 15, 2015 agreement, would not have executed the note, and would not have borrowed any money from Gurney that forms the basis of the claims in this suit. Rather, he would have simply demanded the payment of $750,000.00 for his remaining 25% interest.

Mr. McCoy executed the note, which Gurney prepared, in October 2015; however, Gurney did not disburse any of the loan proceeds from the promissory note until November 2015 and he never disbursed the full $750,000.00 as set forth in the note, even though it was required by the terms of the note. Rather, Gurney made disbursements as follows: $156,305.00 on November 19, 2015; $264,513.98 on January 20, 2016; $97,898.28 on February 3, 2016; $62,654.94 on March 3, 2016; $18,500.00 on March 30, 2016; $72,500.00 on April 11, 2016; $20,402.77 on April 27, 2016; and $18,500.00 on June 30, 2016. Although these disbursements totaled $711,274.97, Gurney continued to charge Mr. McCoy full interest on the full $750,000.00 from the date that he executed the note on October 25, 2015. During this time, Mr. McCoy complied with all terms of the note, including payment of interest.

In 2016, Gurney began violating terms of the servitude agreement in multiple ways. First, Gurney prevented Mr. McCoy from staying at the lodge on multiple occasions. Next, Gurney also tried to make Mr. McCoy pay for the servitude, even though the consideration for Mr. McCoy executing the note (and

effectively repaying the purchase price for his 25% interest) was the granting of the lifetime servitude, and it was agreed that Mr. McCoy would not pay for the use of the servitude. Thereafter, Gurney terminated the servitude agreement in writing and Gurney has precluded Mr. McCoy from using the lifetime servitude or exercising any of the rights granted to him. After Gurney breached the October 15, 2015 agreement with regard to the servitude, Mr. McCoy ceased making payments on the note in 2017 because the servitude agreement formed the consideration for his execution of the note and the October 15, 2015 agreement.

According to the October 15, 2015 agreement between Mr. McCoy and Gurney, which was attached to Mr. McCoy's affidavit, "[o]wnership and capital obligations [of Deer Dynasty Ranch, LLC and Deer Dynasty Properties] [would be] 100% Gurney" and "[c]apital obligations [would] be borne 100% by Gurney." The October 15, 2015 agreement also provided that upon the sale of the "Endeavor," Gurney would be paid the first $3,292,000.00 from the gross sales receipts; next, Mr. McCoy would be paid 1% of the gross sales receipts; then, Mr. McCoy would be paid $212,000.00 from the gross sales receipts, if any; and all residue, if any, would be paid to Gurney. Mr. McCoy was provided a seven calendar day right of first refusal in the event of any proposed sale of the Endeavor for no less than $3,292,000.00, and his time-limited right to redeem his 25% interest in the Endeavor for $300,000.00 was extinguished. The agreement further provided that Mr. McCoy would have a personal servitude on the 250 and 300 acres, which would exclude the right to take/kill game of any kind without Gurney's written approval, except that Mr. McCoy would have the right to kill two turkeys per year, and would exclude the right to stay overnight if Gurney was present, other than as an invited guest. Mr. McCoy was to obtain from Circle C a 100 year lease in favor of Deer Dynasty Ranch, LLC and the Endeavor for a non-exclusive, but unrestricted use of the barn, with said lease having specific

15

provisions.

The October 15, 2015 agreement further provided that Gurney would lend $750,000.00 to Mr. McCoy on a two year promissory note, which was for a residential development project. The promissory note would be secured by Mr. McCoy's monetary interests in the Endeavor that remain after and result from the agreement and by mortgages on all immovable property purchased with the loan capital. The loan would have 12% interest per year based on the loan amount of $750,000.00, allowing quarterly interest only payments, each in the amount of $22,500.00, thus the annual interest each year shall be $90,000.00 at $22,500.00 per quarter year, and shall total $180,000.00 for the entirety of the note.

In addition, the October 15, 2015 agreement provided that the operating agreements for Deer Dynasty Properties, LLC and Deer Dynasty Ranch, LLC would be amended to reflect the terms agreed to and the parties would enter into and execute any and every document necessary to memorialize, formalize, ratify and/or notify third-parties of this agreement and its terms. The agreement was signed by Mr. McCoy on November 3, 2015 and by Gurney on November 10, 2015.

Based on our *de novo* review of the documents offered by Mr. McCoy in opposition to the motion for summary judgment, we find Mr. McCoy met his burden of establishing that there are genuine issues of material fact as to the issue of consideration that preclude summary judgment in favor of Gurney on the note. More specifically, we find Mr. McCoy established genuine issues of material fact as to whether Gurney breached the October 15, 2015 agreement between the parties, thereby resulting in a failure of consideration, and whether Gurney was obligated under the note and the October 15, 2015 agreement to disburse the entire loan proceeds, thereby resulting in a lack of consideration.

The documents offered by Mr. McCoy established that the note was part of

the October 15, 2015 agreement between the parties and that there was an issue of fact as to whether Gurney breached that agreement by preventing and eventually terminating Mr. McCoy's servitude that was established by the agreement, and by failing to disburse the full proceeds of the loan. Mr. McCoy's affidavit establishes that he both executed the note for the $750,000.00 loan from Gurney and transferred his interest in Deer Dynasty Properties, LLC and Deer Dynasty Ranch, LLC to Gurney in exchange for the lifetime servitude set forth in the October 15, 2015 agreement. Thus, any purported breach of the October 15, 2015 agreement by Gurney might result in a failure of consideration, or in a lack of consideration; it might also excuse Mr. McCoy's non-performance under the note, or reduce the amount to which Gurney is entitled to recover under the note.

Gurney contends that Mr. McCoy should not be able to rely on the October 15, 2015 agreement in defense to the suit on the note because (1) any purported breach of the October 15, 2015 agreement would be an unliquidated claim for damages, which cannot be used to offset a liquidated claim, such as enforcement of a promissory note, and (2) the October 15, 2015 agreement constitutes inadmissible parol evidence, which cannot be used to alter the terms of the note. However, we find no merit to Gurney's contentions.

We recognize that in general, courts have held that an unliquidated claim for damages based upon a breach of contract may not be offset against a liquidated claim, such as a promissory note. See **American Bank**, 553 So.2d at 844-846. However, in cases where a promissory note is part of a larger related agreement between the parties, a breach of the larger related agreement may provide a defense to the enforcement of the promissory note, thereby rendering summary judgment inappropriate. See **Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc.**, 579 So.2d 1115, 1121-1123 (La. App. 2nd Cir.), writ denied, 587 So.2d 695 (La. 1991) and **Butler v. Begnauds, LLC**, 2019-51 (La. App. 3rd

Cir. 5/29/19), 273 So.3d 412, 481; see also **Geaux Live Digital, L.L.C. v. Taylor and Ross Entertainment, L.L.C.,** 2011-601 (M.D. La. 6/28/12), 2012 WL 13001902, *3-4.

In this case, we find the October 15, 2015 agreement and the note are so interrelated that a breach of the October 15, 2015 agreement could provide a defense to the enforcement of the note. The note was a part of the October 15, 2015 agreement, was executed in conjunction with the October 15, 2015 agreement and the specific terms, purpose, and security for the note were specifically set forth and related to the terms of the October 15, 2015 agreement. As such, we find that Mr. McCoy is entitled to rely on the October 15, 2015 agreement in defense of the suit on the note and in defense of Gurney's motion for summary judgment. And based on the terms of the October 15, 2015 agreement and Mr. McCoy's affidavit, summary judgment was improper.

As to whether the October 15, 2015 agreement constitutes inadmissible parol evidence, we also recognize that, in general, parol evidence is not admissible to vary or contradict the terms of an authentic act or an act under private signature, and further, that the promissory note herein was an act under private signature. See La. C.C. art. 1848; **Sonnier v. Boudreaux,** 95-2127 (La. App. 1st Cir. 5/10/96), 673 So.2d 713, 718. However, between the parties to an instrument, parol evidence is admissible to show want or failure of consideration. **Scafidi v. Johnson,** 420 So.2d 1113, 1115 (La. 1982); **M.G. Mayer Yacht Servs., Inc. v. Ryder,** 2003-2225 (La. App. 1st Cir. 10/29/04), 897 So.2d 72, 74. Parol evidence is also admissible to prove that the written act was modified by a subsequent and valid oral agreement. La. C.C. art. 1848. As such, parol evidence is admissible as between Mr. McCoy and Gurney to show either want or failure of consideration. Furthermore, we find that Mr. McCoy was not offering the October 15, 2015 agreement to vary or contradict the terms of the note. Indeed, the terms set forth in

18

October 15, 2015 agreement pertaining to the note are consistent with the terms of the note itself. Rather, Mr. McCoy has offered the October 15, 2015 agreement for the purpose of establishing the entire agreement of the parties, of which the note was a part, in order to establish a failure or a lack of/want of consideration and Gurney's non-performance of the parties' overall agreement. Thus, the October 15, 2015 agreement does not constitute inadmissible parol evidence and was appropriately relied on by Mr. McCoy in defense of the suit and in opposition to Gurney's motion for summary judgment.[3]

For all of the above and foregoing reasons, we find that Mr. McCoy established genuine issues of material fact as to the issue of consideration. As such, the trial court improvidently granted Gurney's motion for summary judgment and entered judgment in favor of Gurney and against Mr. McCoy for principal in the amount of $711,274.97, plus accrued and unpaid interest in the amount of $90,000.00, plus late fees in the amount of $40,063.35. Therefore, we reverse the April 1, 2020 judgment of the trial court.

Additionally, we note that the March 2, 2021 judgment, which granted Gurney's motion to tax attorney fees, costs, and judicial interest and entered judgment in favor of Gurney and against Mr. McCoy for attorney fees in the amount of $73,015.00, court costs and fees in the amount of $3,983.48, deposition costs in the amount of $2,102.10, and judicial interest from October 25, 2017 until satisfied, was entered in furtherance of the April 1, 2020 summary judgment. As we have reversed that judgment herein, we vacate the March 2, 2021 judgment rendered in furtherance of that judgment.

---

[3] We do note that Gurney offered parol evidence, i.e. the deposition testimony of Mr. McCoy, in order to establish that the note was a construction line of credit rather than a loan for $750,000.00 as provided by the note and by the October 15, 2015 agreement. However, because we find the documents offered by Mr. McCoy were sufficient to establish genuine issues of material fact as to the issue of consideration, we need not address the effect of that parol evidence.

## CONCLUSION

For all of the above and foregoing reasons, the April 1, 2020 judgment, which granted the motion for summary judgment and entered judgment in favor of Scott Gurney, in his capacity as Trustee of the Gurney Family Trust, and against Josh P. McCoy in the principal amount of $711,274.97, plus accrued and unpaid interest in the amount of $90,000.00, and late fees in the amount of $40,063.35, is reversed. In addition, the March 2, 2021 judgment rendered in furtherance of the April 1, 2020 judgment, which entered judgment in favor of Scott Gurney, in his capacity as Trustee of the Gurney Family Trust and against Josh P. McCoy in the amount of $73,015.00 for attorney fees, court costs and fees in the amount of $3,983.48, and deposition costs in the amount of $2,102.10, plus judicial interest from October 25, 2017 until satisfaction of the April 1, 2020 judgment, is vacated.

All costs of this appeal are assessed to Scott Gurney, in his capacity as Trustee of the Gurney Family Trust.

**APRIL 1, 2020 JUDGMENT REVERSED; MARCH 2, 2021 JUDGMENT VACATED.**

SCOTT GURNEY, IN HIS CAPACITY
AS THE TRUSTEE OF THE GURNEY FAMILY TRUST

VERSUS

JOSH P. MCCOY

************************************************

**McClendon, J., concurring.**

I concur in the result reached by the majority.